UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil No. 06-00934 (RJL)<br>) |
| UNITED STATES POSTAL SERVICE, | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

This is an action for enforcement of a labor arbitration award that arose through the grievance procedure of Plaintiff, American Postal Workers Union, AFL-CIO ("APWU" or "Union"), and Defendant, the United States Postal Service ("Postal Service"). A mutually-selected arbitrator, Alan R. Krebs, found that the Postal Service violated the National Agreement by reassigning timekeeping work from the clerk craft to supervisors at the Renton Post Office in Renton, Washington. Arbitrator Krebs ordered the Postal Service to return to the bargaining unit the timekeeping work that had previously been performed by the bargaining unit, but that it had reassigned to supervisors following the implementation of the Time and Attendance Collection System ("TACS"). Following the issuance of Arbitrator Krebs' award, the Postal Service offered to return some, but not all of the reassigned work to the bargaining unit. When the APWU insisted that the Postal Service comply with the award by returning all of the reassigned work to the bargaining unit, the Postal Service refused. As a result, the Postal Service has returned none

of the reassigned computer data entry timekeeping work to the bargaining unit and continues to defy Arbitrator Krebs' award.

The Court should enforce Arbitrator Krebs' award requiring the Postal Service to return to the bargaining unit all of the work, previously performed by clerks, remaining after the implementation of TACS, that it had assigned to supervisors.

## II.   UNDISPUTED MATERIAL FACTS OF THIS CASE

Plaintiff is a labor union representing a nationwide bargaining unit of over 350,000 postal employees.  Plaintiff and Defendant are party to a national collective bargaining agreement in effect from November 21, 2000, through November 20, 2003, ("the National Agreement") that set forth the terms and conditions of employment of the employees in Union's bargaining unit.[1] (Compl. at ¶ 6; Answer at ¶ 6.)   The National Agreement is negotiated by the parties at the national level.  (Declaration of Donald Curtis Matt attached hereto as Attachment 1 ("Matt Dec.") at ¶ 3.)  Article 15 of the National Agreement establishes a grievance procedure leading to arbitration before a neutral arbitrator in the event the parties are unable to otherwise resolve disputes under the National Agreement through the grievance procedure.  (Compl. at ¶ 7; Answer at ¶ 7; Matt Dec. at ¶ 3.)  Article 1, Section 6, of the National Agreement, with few exceptions, prohibits postal supervisors from performing bargaining unit work.  (Matt Dec. at ¶ 3 and Ex. A attached thereto.)

In 1997, the Postal Service informed the APWU that it intended to replace its former time and attendance keeping systems with TACS.  (Matt Dec. at ¶ 4 and Ex. B attached thereto at p.

---

[1]   The 2000-2003 National Agreement has twice been extended and is currently set to expire on November 20, 2006.

3.) Some years later, on June 3, 2002, the Postal Service implemented the new TACS at its Post Office in Renton, Washington. (Matt Dec. at ¶ 5 and Ex. B attached thereto at p. 4.)

Up until the Postal Service implemented TACS in 2002, APWU clerks had performed significant timekeeping duties. (Matt Dec. at ¶ 6.) These duties included correction of errors in clock rings by inputting information into the timekeeping computer system; collection of documentation from employees who were late, absent or on leave and entry of this information into the computer system; entry of data regarding requests for temporary schedule changes into the computer system; printing out of computer reports; monitoring of overtime; maintenance of files; ordering badges for new employees; and related clerical duties. *Id*.

When the Postal Service implemented TACS, it took most if not all of these duties away from the bargaining unit and reassigned the work to supervisors. Most notably, the Postal Service removed all data entry work from the bargaining unit and reassigned that work to supervisors. (Matt Dec. at ¶ 7.) The entry of computer data was the largest component of the timekeeping duties that the bargaining unit had been performing. (Matt Dec. at ¶ 13.)

In response to the Postal Service's reassignment of the timekeeping work, the APWU, on June 27, 2002, filed a grievance challenging removal of timekeeping duties from the clerk craft and the assumption of this work by management. (Matt Dec. at ¶ 9.) On September 14, 2005, the parties presented the matter at an arbitration hearing before Alan Krebs. (Matt Dec. at ¶ 10 and Ex. B attached thereto at p. 1.)

On November 28, 2005, Arbitrator Krebs issued his decision and award sustaining the grievance in USPS Case No. E00C-4E-C 02224433/APWU Case No. 200202. (Matt Dec. at ¶ 11 and Ex. B attached thereto.) Arbitrator Krebs' award provided that the Postal Service had

3

violated the National Agreement by reassigning timekeeping work from the clerk craft to supervisors at the Renton Post Office. *Id*. Although he acknowledged that with the new TACS technology some duties that the bargaining unit used to perform had been completely eliminated, Arbitrator Krebs found that certain duties previously performed by the bargaining unit remained, but had been reassigned to supervisors. (Matt Dec. at ¶ 11 and Ex. B attached thereto at p. 11.) The arbitrator found that this remaining work that the Postal Service had reassigned to supervisors included "entry of timekeeping data into the computer system and, presumably, filing or processing timekeeping forms." *Id*. In so finding, Arbitrator Krebs ordered that "The Postal Service shall reassign the remaining timekeeping duties which had previously [been] performed by [a clerk] and is now being performed by supervisors back to the bargaining unit." (Matt Dec. at ¶ 11 and Ex. B attached thereto at p. 14.)

Following the issuance of this award, on February 17, 2006, the Postal Service offered the APWU an arbitration settlement agreement referencing this same grievance case number. (Compl. at ¶ 10; Answer at ¶ 10; Matt Dec. at ¶ 12 and Ex. C attached thereto.) The offer provided that the Postal Service would reassign back to the bargaining unit some, but not all, of the timekeeping duties currently being performed by supervisors. *Id*. These types of duties were largely clerical in nature and included verification of employee clock rings; processing of certain forms; printing of timekeeping reports; and filing of forms. *Id*. The offer also included the following language: "Those EAS duties directly associated with the new TACS technology will NOT to be [sic] returned to the clerk craft. These duties include: online data entries, online error correction entries, online adjustments, etc. that are presently being entered directly into TACS by EAS employees." *Id*.

4

The APWU did not agree to the proposed settlement because the APWU wanted full compliance with Arbitrator Krebs' award and it did not consider this offer to constitute full compliance because the Postal Service continued its refusal to reassign the timekeeping work that involved computer data entry.  (Compl. at ¶ 11; Answer ¶ 11; Matt Dec. at ¶ 13.)

As of the date of this pleading, the Postal Service has not returned the timekeeping work to the bargaining unit.  (Matt Dec. at ¶¶ 14, 15.) It has also not sued to vacate this award nor has it sought clarification of the language or terms of the award.  Instead, the Postal Service has simply defied the clear mandate of Arbitrator Krebs' award.

### III.    ARGUMENT

A. <u>In Accordance with the Strong Federal Policy of Enforcing Labor Arbitration Awards and Because the Postal Service Lacks Any Viable Defense to Compliance, the Court Should Enforce Arbitrator Krebs's Award</u>

The standard for enforcing Arbitrator Krebs' award is a highly deferential one developed by the United States Supreme Court in order to preserve and protect the special dispute resolution value of labor arbitration.[2]  Federal courts have a duty to enforce arbitration awards in all but extraordinary circumstances.  Since deciding the *Steelworkers Trilogy* in 1960, the Supreme Court has often held that the judiciary's role in reviewing and enforcing arbitration awards arising from collectively bargained agreements between labor unions and employers is one of almost complete deference to the arbitration process.  *United Steelworkers v. American*

---

[2]     This Court has jurisdiction to enforce the arbitration award under Section 1208 (b) of the Postal Reorganization Act.  39 U.S.C. § 1208 (b).  This statute is the postal analogue of Section 301 (a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 (a), the statute under which non-postal labor arbitration awards are enforced.  Courts regularly rely on precedent under Section 301 (a) in deciding cases under Section 1208 (b).  *See, e.g.*, *National Ass'n of Letter Carriers v. U.S. Postal Service*, 590 F.2d 1171, 1174 (D.C. Cir. 1978).

*Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); accord *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976). Courts are foreclosed from reviewing the merits of an arbitrated dispute and must defer to the determinations of the arbitrator. *American Mfg. Co.*, 363 U.S. at 568 ("The courts...have no business weighing the merits of the grievance..."); *Hines*, 424 U.S. at 562. In *Enterprise Wheel*, the Supreme Court recognized that a labor arbitrator has wide discretion to fashion an award and remedy so long as it "draws its essence from" the parties' contract. 363 U.S. at 597. Ultimately, the important role an arbitrator plays in collective bargaining requires that courts give extraordinary deference to an arbitrator's decision and enforce labor arbitration awards unless the award presents "egregious deviations from the norm." *OPEIU v. Washington Metro. Area Transit Auth.*, 724 F.2d 133, 137 (D.C. Cir. 1983); *National Post Office Mailhandlers v. U.S. Postal Service*, 751 F.2d 834, 840 (6th Cir. 1985).

Given the extraordinary deference the courts give to labor arbitration awards, there is little question that the Court should enforce Arbitrator Krebs' award requiring the Postal Service to reassign to the bargaining unit the timekeeping duties that it had assigned to supervisors. The award is clear and unambiguous and fits squarely within the duties and authority given to Arbitrator Krebs by the Postal Service and the APWU through the National Agreement. *See Warrior & Gulf*, 363 U.S. at 582 ("we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail..."). As the Supreme Court realized more than forty years ago, the parties contracted for and sought Arbitrator Krebs' decision and remedy, and "the courts have no business overruling him..." *Enterprise Wheel*, 363 U.S. at 599. Arbitrator

Krebs' award should therefore be enforced.

The Postal Service has presented no meaningful defense to its failure to comply with the award. In any event, because it failed to seek vacation of Arbitrator Krebs' award within the applicable 90 day statute of limitations, it is barred from raising any affirmative defense to its failure to comply with the award. See, *Service Employees International Union, Local 722, AFL-CIO v. Washington Hospital Center*, 1983 WL 2085 (D.D.C.) *2 n. 2; 115 L.R.R.M. 3581 (citing D.C. Code for the proposition that actions to vacate an arbitration award must be brought within 90 days of receipt of the award). As this court has pointed out, "The courts have uniformly held that a party who fails to make a timely motion to vacate an arbitration award is barred from raising affirmative defenses in a suit to enforce the award." *Sheet Metals Workers National Pension Fund v. Metals and Machining Fabricators, Inc.*, 622 F.Supp. 116, 118 (D.D.C. 1985) (citing *Fortune, Alsweet and Eldrige, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir. 1983); *Chauffeurs, Teamsters, etc. v. Jefferson Trucking*, 628 F.2d 1023 (7th Cir. 1980); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 60-62 (1981)); accord, *Service Employees International Union, Local 36 v. Office Center Services, Inc.*, 670 F.2d 404, 410-412 (3d Cir. 1982); *Local Union 26, International Brotherhood of Electrical Workers, AFL-CIO v. CWS Electric*, 669 F.Supp. 495, 498 (D.D.C. 1987).

In accordance with the *Steelworker Trilogy* and its progeny, there is a strong federal policy of enforcing labor arbitration awards in all but the rarest of circumstances. None of these unusual circumstances are present in this case and the Postal Service has alleged no valid grounds for the Court to decline to enforce this award.

      B.      <u>The Court Should Award Plaintiff Attorneys' Fees Because Defendant Has No Good Faith Defense for its Non-compliance With the Krebs Award.</u>

The Court should award the APWU attorneys' fees and expenses for having to bring this action to enforce the Krebs award. The Court may use its equitable powers to award Plaintiff attorneys' fees if Defendant "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *National Ass'n of Letter Carriers v. U.S. Postal Service*, 590 F.2d 1171, 1176 (D.C. Cir. 1978). Evidence of bad faith includes situations where a party pursues frivolous arguments in defending an action. *Id.* at 1177.

In this instance, the Postal Service has simply refused to comply with Arbitrator Krebs' award. In its answer to the complaint, the Postal Service claims that it reserves the right to assert other affirmative defenses. (Answer at 1.) What the Postal Service fails to acknowledge is that it did not sue to vacate the award and the statute of limitations on such a suit has passed. As such, it is barred from asserting any such affirmative defense that could have formed the basis for vacation of the award. Thus, the Postal Service has no real defense to its non-compliance with the Krebs award and has engaged in bad faith in both its non-compliance and its defense of this action. The APWU should be awarded its fees and costs for having to undergo this action to seek compliance with an arbitration award for which the Postal Service has no excuse for defying.

## IV. CONCLUSION

For these reasons the Court should grant the Plaintiff's Motion for Summary Judgment and order the Postal Service to comply with Arbitrator Krebs' November 28, 2005, award in USPS Case No. E00C-4E-C 02224433/APWU Case No. 200202 and to pay the APWU's

attorneys' fees and costs incurred in the prosecution of this action seeking compliance with the award.

Date: October 9, 2006

Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By: _____/s/: Brenda C. Zwack_____
   Brenda C. Zwack (D.C. Bar No. 482673)
   1300 L Street, N.W., Suite 1200
   Washington, DC  20005-4178
   (202) 898-1707  /  FAX (202)682-9276

*Attorneys for the American Postal Workers Union, AFL-CIO*