UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br>475 L'Enfant Plaza, S.W.<br>Washington, D.C. 20260,<br><br>Defendant. | Civil Action No. 06cv934 (RJL) |

## DECLARATION OF DONALD CURTIS MATT

I, Donald Curtis Matt, in lieu of an affidavit as permitted by 28 U.S.C. Section 1746, declare as follows:

1. I have been employed as a clerk in Renton, Washington by the United States Postal Service ("USPS" or "Postal Service") for the past 32 years. The Renton Post Office is comprised of three offices: the Renton Main Office, the Downtown Station, and the Highlands Station. I currently work at the Downtown Station.

2. For approximately the past year, I have held the position of Associate Office Director for Renton, Washington, for the Greater Seattle Area Local of the American Postal Workers Union ("APWU"). Prior to holding this position, I held the position of President of the Renton Local of the APWU for about five or six years until that local merged with the Greater Seattle Area Local of the APWU earlier this year.

3. The APWU and the Postal Service are parties to a national collective bargaining agreement (hereinafter the "National Agreement") in effect from November 21, 2000, through November 20, 2003. The National Agreement has been extended twice and currently is set to

Attachment A

expire on November 20, 2006. The National Agreement is negotiated by the parties at the national level. Article 15 of the National Agreement provides a grievance procedure culminating in binding arbitration. Article 1, Section 6, of the National Agreement, with some exceptions, generally prohibits the performance of bargaining unit work by postal supervisors. A copy of Articles 1 and 15 of the National Agreement are attached hereto as Exhibit A.

4. In 1997, the Postal Service informed the American Postal Workers Union ("APWU") that it intended to replace its former time and attendance keeping systems with a new program called the Time and Attendance Collection System ("TACS").

5. On June 3, 2002, the Postal Service implemented TACS at its Post Office in Renton, Washington.

6. Up until the Postal Service implemented TACS in 2002, APWU clerks had performed significant timekeeping duties. These duties included correction of errors in clock rings by inputting information into the timekeeping computer system; collection of documentation from employees who were late, absent or on leave and entry of this information into the computer system; entry of data regarding requests for temporary schedule changes into the computer system; printing out of computer reports; monitoring of overtime; maintenance of files; ordering badges for new employees; and related clerical duties.

7. When the Postal Service implemented TACS, it took most if not all of these duties away from the bargaining unit and reassigned the work to supervisors. Most notably, the Postal Service removed all data entry work from the bargaining unit and reassigned that work to supervisors.

8. Article 1, Section 6.A, of the National Agreement provides that supervisors are prohibited from performing bargaining unit work at post offices with 100 or more bargaining

2

unit employees, except: in an emergency, for the purpose of training or instructing employees; to assure proper operation of equipment; or to protect the property of the USPS. See Exhibit A at 4.

9. On June 27, 2002, on behalf of the Union, I filed a grievance challenging removal of timekeeping duties from the clerk craft and the assumption of this work by management.

10. Ultimately, a hearing of this grievance arbitration took place on September 14, 2005, in Renton, Washington, before Arbitrator Alan R. Krebs.

11. On November 28, 2005, Arbitrator Krebs issued his decision and award sustaining the grievance in USPS Case No. E00C-4E-C 02224433/APWU Case No. 200202. A copy of this award is attached hereto as Exhibit B. This award provided that the Postal Service violated the National Agreement by reassigning timekeeping work from the clerk craft to supervisors at the Renton Post Office. Although he acknowledged that with the new TACS technology some duties that the bargaining unit used to perform had been completely eliminated, Arbitrator Krebs found that certain duties previously performed by the bargaining unit remained, but had been reassigned to supervisors. Exhibit B at 11. Arbitrator Krebs found that this remaining work that the Postal Service had reassigned to supervisors included "entry of timekeeping data into the computer system and, presumably, filing or processing timekeeping forms." *Id.* In so finding, Arbitrator Krebs ordered that "The Postal Service shall reassign the remaining timekeeping duties which had previously [been] performed by [a clerk] and is now being performed by supervisors back to the bargaining unit." *Id.* at 14.

12. Following the issuance of this award, on February 17, 2006, the Postal Service offered the APWU an arbitration settlement agreement referencing this same grievance case number. The offer provided that the Postal Service would reassign back to the bargaining unit some, but not all, of the timekeeping duties currently performed by the supervisors. The types of

3

duties the Postal Service offered to return to the bargaining unit were largely clerical in nature and included verification of employee clock rings; processing of certain forms; printing of timekeeping reports; and filing of forms. The offer also included the following language: "Those EAS [Executive Administrative Salary structure[1]] duties directly associated with the new TACS technology will NOT to be [sic] returned to the clerk craft. These duties include: online data entries, online error correction entries, online adjustments, etc. that are presently being entered directly into TACS by EAS employees." A copy of this offer of settlement is attached hereto as Exhibit C.

13. Around this same time, I met with Michael Hoover, Postmaster of the Renton Post Office, to discuss this settlement offer. Mr. Hoover stated that the Postal Service would not return any computer data entry work to the bargaining unit. He told me that the Postal Service would not entrust members of the bargaining unit with having passwords granting access to the TACS. The entry of computer data is the largest component of the timekeeping duties that the bargaining unit had formerly performed. I told Mr. Hoover that the Union would not agree to the proposed settlement because the APWU wanted full compliance with Arbitrator Krebs' award and we did not consider this offer to constitute full compliance. It was agreed between Postmaster Hoover and me that the bargaining unit employees could assume what clerical duties were being offered at that time by the Postal Service, but this in no way would constitute a final agreement of full compliance to the Krebs' award.

14. After that meeting, the Postal Service returned only clerical timekeeping work to the bargaining unit. At the facility where I work, supervisors still continue to perform this work,

---

[1] "EAS" is a common designation in postal parlance and is used to refer to supervisors by reference to their separate pay scale from bargaining unit employees.

as well as all of the computer data entry of timekeeping information that Arbitrator Krebs specifically addressed in his award.

15.　It is my understanding that the management of the other two Renton branches has allowed members of the bargaining unit to perform some of the clerical duties I have described above, though I am unaware of which bargaining unit employees are involved, or the amount of clerical duties performed. I do know that the Postal Service has not permitted members of the bargaining unit to perform the computer data entry of timekeeping information.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of October, 2006.

Donald Curtis Matt