# COLLECTIVE BARGAINING AGREEMENT

Between
**American Postal Workers Union, AFL-CIO**

And
**U.S. Postal Service**

**November 21, 2000**
**November 20, 2003**



Blumberg No. 5119

EXHIBIT
A

## Table of Contents

Preamble ........................................................................... 1
Article 1   Union Recognition ............................................. 1
Article 2   Non-Discrimination and Civil Rights .................. 5
Article 3   Management Rights ........................................... 6
Article 4   Technological and Mechanization Changes ...... 7
Article 5   Prohibition of Unilateral Action .......................... 9
Article 6   No Layoffs or Reduction In Force ...................... 9
Article 7   Employee Classification ................................... 18
Article 8   Hours of Work .................................................. 23
Article 9   Salaries and Wages ......................................... 29
Article 10  Leave ............................................................... 43
Article 11  Holidays ........................................................... 47
Article 12  Principles of Seniority, Posting and
            Reassignment .................................................. 50
Article 13  Assignment of Ill or Injured Regular Workforce
            Employees ....................................................... 72
Article 14  Safety and Health ............................................ 80
Article 15  Grievance-Arbitration Procedure .................... 90
Article 16  Discipline Procedure ..................................... 109
Article 17  Representation .............................................. 115
Article 18  No Strike ........................................................ 123
Article 19  Handbooks and Manuals .............................. 124
Article 20  Parking ........................................................... 126
Article 21  Benefit Plans .................................................. 127
Article 22  Bullentin Boards ............................................ 129
Article 23  Rights of Union Officials to Enter Postal
            Installations .................................................... 129
Article 24  Employees on Leave with Regard to Union
            Business ........................................................ 130

Article 25 Higher Level Assignments ............131
Article 26 Uniforms and Work Clothes ............133
Article 27 Employee Claims ............136
Article 28 Employer Claims ............137
Article 29 Limitation on Revocation of Driving
         Privileges ............139
Article 30 Local Implementation ............141
Article 31 Union-Management Cooperation ............145
Article 32 Subcontracting ............146
Article 33 Promotions ............150
Article 34 Work and/or Time Standards ............152
Article 35 Employee Assistance Program ............154
Article 36 Credit Unions and Travel ............157
Article 37 Clerk Craft ............158
Article 38 Maintenance Craft ............198
Article 39 Motor Vehicle Craft ............221
Article 41 Material Support Craft ............242
Article 42 Energy Shortages ............257
Article 43 Separability and Duration ............257

**MEMORANDUMS/LETTER OF INTENT**

**APPENDIX A**
APWU Transitional Employee Memoranda ............259
Transitional Employee Annual Leave Provisions ............264
Article 7 Employee Classificaton ............267
Article 8 Hours of Work ............268
Article 9 Salaries and Wages ............270
Article 10 Leave ............271
Article 11 Holidays ............271
Aticle 19 Handbooks and Manuals ............272
APPENDIX B - Enhancing Career Opportunities ............274

iv

**APPENDIX B**
Memorandum of Understanding and Letters of Intent ....276
Deaf and Hard of Hearing ............277
Layoff Protection ............281
Article 7.3 ............282
Article 7, 12 and 13 - Cross Craft and Office Size ........283
Maximation/Full-time Flexible - APWU ............283
Conversions Under the Maximation Memorandum ............284
Article 8 ............285
Article 8 Questions and Answers ............287
Modified Work Week ............289
Memorandum of Understanding Regarding Modified
         Work Week ............291
Modified Work Week (10/4) Guidelines ............292
Granting Step Increases ............296
Annual Leave Exchange Option ............296
Sick Leave for Dependent Care ............297
Annual Leave Carryover ............298
PTF Court Leave ............299
Leave Policy ............300
Paid Leave and LWOP ............301
Leave Sharing ............302
Article 12.5.C.5.b(6) ............303
Cross Craft Reassignments ............304
Transfers ............305
PTFs Reassignment Opportunities ............309
Headquarters Threat Assessment Team/Workplace
         Enviroment Improvement ............310
Expedited Arbitration ............311
Processing of Post-Removal Grievances ............312
Interest on Back Pay ............313
Role of Inspection Service in Labor Relations Matters ..313

v

Air Conditioning in 9 Ton Vehicles, Tractors, and
  Spotters ........................................................................ 355
Work Clothes Program - MES ...................................... 356
Tranining Opportunities - Mail Equipment Shops ........ 357
Mail Equipment Shop Operations .................................. 357
Overtime at the Mail Equipment Shops ......................... 358
Dependent Care .............................................................. 359

APPENDIX C ................................................................... 361
Interest Arbitration Opinion ............................................ 362
Supplemental Opinion Dealing with Economic Issues ... 405

Joint Contract Interpretation Manual ............................. 314
Administrative Dispute Resolution Procedures ............. 315
Step 4 Procedures .......................................................... 316
Timeliness Regarding Step 2(h) Appeals ....................... 317
Grievance/Arbitration Appeals ....................................... 317
Implementation Articles 15 and 16, 1998 Agreement ... 318
Discipline Task Force .................................................... 318
Stamp Stock Tolerances ................................................. 320
Reinstatement of Driving Privilege ............................... 320
Local Implementation .................................................... 322
Bargaining Information ................................................. 325
Subcontracting Cleaning Services ................................. 326
Highway Contracts ........................................................ 327
Subcontracting - Mail Equipment Shops ...................... 329
Training Committee ...................................................... 330
Use of Privately Owned Vehicles ................................. 331
PTF Preference ............................................................. 333
Bids With Required Computer Skills ........................... 334
Productive Distribution ................................................ 336
Interlevel Bidding - Entrance Examination
  Requirements ............................................................. 337
Bidding Provisions - Letter Sorting Machines ............ 339
Retail Training Task Force .......................................... 343
Retail Operations Within Installations ........................ 344
Computerized Forwarding System (CFS) Rotation ..... 345
Function Four Flexibility ............................................. 347
Management Meetings on Maintenance Work
  Assignments ............................................................. 348
Brushup Training ........................................................ 349
Operation of Powered Industrial Equipment for Material
  Support Craft Employees ......................................... 355

# Article 1.1

## PREAMBLE

This Agreement (referred to as the **2000** National Agreement) is entered into by and between the United States Postal Service (hereinafter referred to as the "Employer") and the American Postal Workers Union, AFL-CIO (hereinafter referred to as the "Union"), **pursuant to an Arbitration Award issued December 18, 2001 and Supplemental Opinion issued January 11, 2002.** The Agreement is effective as of **December 18, 2001** unless otherwise provided.

## ARTICLE 1
## UNION RECOGNITION

### Section 1. Union

The Employer recognizes the Union designated below as the exclusive bargaining representative of all employees in the bargaining unit for which each has been recognized and certified at the national level:

American Postal Workers Union, AFL-CIO—Maintenance Employees
American Postal Workers Union, AFCIO—MotorVehicle Employees
American Postal Workers Union, AFL-CIO—Postal Clerks
- The Special Delivery Messengers were merged into the Clerk Craft by Memorandum of Understanding dated November 20, 1997.
American Postal Workers Union, AFL-CIO—Mail Equipment Shops Employees
American Postal Workers Union, AFL-CIO—Material Distribution Centers Employees

1

---

**Notes:**

1. **Bold Face Type** in the text indicates revised or new language. Bold Face Type in headings does not necessarily indicated change.

2. Cross-references to relevant Memorandums of Understanding and Letters of Intent are included in the text of the Agreement. The location of the cross-references is for the convenience of the reader, and in no way affects the content or intent of the Agreement, the Memorandums, or the Letters of Intent.

3. In the **2000** National Agreement, references to a union, craft or bargaining unit are limited to the APWU and the crafts that it represents, with the following understandings:

— Article 1.5: The Postal Service will continue to inform the APWU of all new positions whether or not the positions are within craft units represented by the APWU.

— Article 6: This article will continue to apply to all bargaining units covered by the September 15, 1978 Award of Arbitrator James J. Healy.

— Article 15.5.D: The Postal Service will continue to send all National level arbitration scheduling letters and moving papers for all bargaining units to the APWU.

— Article 33.2: This article will continue to permit employees in non-APWU represented crafts to make application for best qualified positions in APWU represented crafts after required procedures are followed.

viii

## Article 1.2

### Section 2. Exclusions

The employee groups set forth in Section 1 above do not include, and this Agreement does not apply to:

1. Managerial and supervisory personnel;
2. Professional employees;
3. Employees engaged in personnel work in other than a purely non-confidential clerical capacity;
4. Security guards as defined in Public Law 91-375, 1201(2);
5. All Postal Inspection Service employees;
6. Employees in the supplemental work force as defined in Article 7;
7. Rural letter carriers;
8. Mail handlers; or
9. Letter carriers.

### Section 3. Facility Exclusions

This Agreement does not apply to employees who work in other employer facilities which are not engaged in customer services and mail processing, previously understood and expressed by the parties to mean mail processing and delivery, including but not limited to Headquarters, Area Offices, Information Service Centers, Postal Service Training and Development Institute, Oklahoma Postal Training Operations, Postal Academies, Postal Academy Training Institute, Stamped Envelope Agency or Mail Transport Equipment Centers.

2

### Section 4. Definition

Subject to the foregoing exclusions, this Agreement shall be applicable to all employees in the regular work force of the U.S. Postal Service, as defined in Article 7, at all present and subsequently acquired installations, facilities, and operations of the Employer, wherever located.

### Section 5. New Positions

A. Each newly created position shall be assigned by the Employer to the national craft unit most appropriate for such position within thirty (30) days after its creation. Before such assignment of each new position the Employer shall consult with the Union signatory to this Agreement for the purpose of assigning the new position to the national craft unit most appropriate for such position. The following criteria shall be used in making this determination:

1. existing work assignment practices;
2. manpower costs;
3. avoidance of duplication of effort and "make work" assignments;
4. effective utilization of manpower, including the Postal Service's need to assign employees across craft lines on a temporary basis;
5. the integral nature of all duties which comprise a normal duty assignment;
6. the contractual and legal obligations and requirements of the parties.

## Article 1.5

3

Article 2.3

# ARTICLE 2
# NON-DISCRIMINATION AND CIVIL RIGHTS

### Section 1. Statement of Principle

The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age, or marital status.

In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act.

(see Memo, page 277)

### Section 2. Committees

There are established at the national and APWU regional/USPS Area levels Joint Committees on Human Rights. The committees will be composed of responsible representatives of the Union and responsible management officials. The committees may develop affirmative action proposals on all matters affecting minority groups. The committees will also be advised of the plan for site selection for facilities planned for national postal mail networks and major metropolitan areas, and review availability of adequate housing and public transportation. The committees shall meet as required at mutually agreeable times.

### Section 3. Grievances

Grievances arising under this Article may be filed at Step 2 of the grievance procedure within fourteen (14) days of when the employee or the Union has first learned or may reasonably have been expected to have learned of the alleged discrimination, unless filed directly at the national level, in

5

---

Article 1.6

B. The Union party to this Agreement shall be notified promptly by the Employer regarding assignments made under this provision. Should the Union dispute the assignment of the new position within thirty (30) days from the date the Union has received notification of the assignment of the position, the dispute shall be subject to the provisions of the grievance and arbitration procedure provided for herein.

### Section 6. Performance of Bargaining Unit Work

A. Supervisors are prohibited from performing bargaining unit work at post offices with 100 or more bargaining unit employees, except:

1. in an emergency;

2. for the purpose of training or instruction of employees;

3. to assure the proper operation of equipment;

4. to protect the safety of employees; or

5. to protect the property of the USPS.

B. In offices with less than 100 bargaining unit employees, supervisors are prohibited from performing bargaining unit work except as enumerated in Section 6.A. 1 through 5 above or when the duties are included in the supervisor's position description.

(The preceding Article, Article 1, shall apply to Transitional Employees)

[see Memo, page 283]

4

## Article 15.1

### Section 9. Field Federal Safety and Health Councils

In those cities where Field Federal Safety and Health Councils exist, one representative of the Union who is on the Local Safety and Health Committee in an independent postal installation in that city and who serves as a member of such Councils, will be permitted to attend the meetings. Such employee will be excused from regularly assigned duties without loss of pay. Employer authorized payment as outlined above will be granted at the applicable straight time rate, provided the time spent in such meetings is a part of the employee's regular work day.

(The preceding Article, Article 14, shall apply to Transitional Employees)

## ARTICLE 15
## GRIEVANCE-ARBITRATION PROCEDURE

### Section 1. Definition

A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

### Section 2. Grievance Procedure Steps

**Step 1:**

(a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within

## Article 15.2 (Step 1)

fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. The employee, if he or she so desires, may be accompanied and represented by the employee's steward or a Union representative. The Union also may initiate a grievance at Step 1 within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance. In such case the participation of an individual grievant is not required. A Step 1 Union grievance may involve a complaint affecting more than one employee in the office. When the Union files a class action grievance, Management will designate the appropriate employer representative responsible for handling such complaint.

(b) In any such discussion the supervisor shall have authority to settle the grievance. The steward or other Union representative likewise shall have authority to settle or withdraw the grievance in whole or in part. No resolution reached as a result of such discussion shall be a precedent for any purpose.

(c) If no resolution is reached as a result of such discussion, the supervisor shall render a decision orally stating the reasons for the decision. The supervisor's decision should be stated during the discussion, if possible, but in no event shall it be given to the Union representative (or the grievant, if no Union representative was requested) later than five (5) days thereafter unless the parties agree to extend the five (5) day period. Within five (5) days after the supervisor's decision, the supervisor shall, at the request of the Union representative, initial the standard grievance form that is used at Step 2 confirming the date upon which the decision was rendered.

(d) The Union shall be entitled to appeal an adverse decision to Step 2 of the grievance procedure within ten (10) days after receipt of the supervisor's decision. Such appeal

## Article 15.2 (Step 2)

shall be made by completing a standard grievance form developed by agreement of the parties, which shall include appropriate space for at least the following:

1. Detailed statement of facts;
2. Contentions of the grievant;
3. Particular contractual provisions involved; and
4. Remedy sought.

**Step 2:**

(a) The standard grievance form appealing to Step 2 shall be filed with the installation head or designee. In any associate post office of twenty (20) or less employees, the Employer shall designate an official outside of the installation as the Step 2 official, and shall so notify the Union Step 1 representative.

(b) Any grievance initiated at Step 2, pursuant to Article 2 or 14 of this Agreement, must be filed within 14 days of the date on which the Union or the employee first learned or may reasonably have been expected to have learned of its cause.

(c) The installation head or designee will meet with the steward or a Union representative as expeditiously as possible, but no later than seven (7) days following receipt of the Step 2 appeal unless the parties agree upon a later date. In all grievances appealed from Step 1 or filed at Step 2, the grievant shall be represented in Step 2 for all purposes by a steward or a Union representative who shall have authority to settle or withdraw the grievance as a result of discussions or compromise in this Step. The installation head or designee in Step 2 also shall have authority to grant or settle the grievance in whole or in part.

## Article 15.2.(Step2).(g)

(d) At the meeting the Union representative shall make a full and detailed statement of facts relied upon, contractual provisions involved, and remedy sought. The Union representative may also furnish written statements from witnesses or other individuals. The Employer representative shall also make a full and detailed statement of facts and contractual provisions relied upon. The parties' representatives shall cooperate fully in the effort to develop all necessary facts, including the exchange of copies of all relevant papers or documents in accordance with Article 31. The parties' representatives may mutually agree to jointly interview witnesses where desirable to assure full development of all facts and contentions. In addition, in cases involving discharge either party shall have the right to present no more than two witnesses. Such right shall not preclude the parties from jointly agreeing to interview additional witnesses as provided above.

(e) Any settlement or withdrawal of a grievance in Step 2 shall be in writing or shall be noted on the standard grievance form, but shall not be a precedent for any purpose, unless the parties specifically so agree or develop an agreement to dispose of future similar or related problems.

(f) Where agreement is not reached the Employer's decision shall be furnished to the Union representative in writing, within ten (10) days after the Step 2 meeting unless the parties agree to extend the ten (10) day period. The decision shall include a full statement of the Employer's understanding of (1) all relevant facts, (2) the contractual provisions involved, and (3) the detailed reasons for denial of the grievance.

(g) If the Union representative believes that the facts or contentions set forth in the decision are incomplete or inaccurate, such representative should, within ten (10) days of receipt of the Step 2 decision, transmit to the Employer's representative a written statement setting forth corrections or

92

93

Case 1:06-cv-00934-RJL    Document 10-5    Filed 10/10/2006    Page 9 of 17

Case 1:06-cv-00934-RJL   Document 10-4   Filed 10/10/2006   Page 10 of 17

## Article 15.2.(Step 3)

additions deemed necessary by the Union. Any such statement must be included in the file as part of the grievance record in the case. The filing of such corrections or additions shall not affect the time limits for appeal to Step 3 or arbitration.

(h) The Union may appeal an adverse Step 2 decision to Step 3. Any such appeal must be made within fifteen (15) days after receipt of the Employer's decision unless the parties' representatives agree to extend the time for appeal. However, the Union may appeal an adverse Step 2 decision directly to arbitration for disciplinary grievances or contract grievances which involve the interpretation, application of, or compliance with the provisions of any local Memorandum of Understanding not in conflict with this Agreement, and those issues the parties have agreed are appealed to Expedited Arbitration. These grievances will be appealed to the appropriate Grievance/Arbitration Processing Center within thirty (30) days after the receipt of the Employer's Step 2 decision. Any appeal must include copies of (1) the standard grievance form, (2) the Employer's written Step 2 decision, and, if filed, (3) the Union corrections or additions to the Step 2 decision.

**Step 3:**

(a) Any appeal from an adverse decision in Step 2 shall be in writing to the appropriate management official at the Grievance/Arbitration Processing Center, with a copy to the Employer's Step 2 representative, and shall specify the reasons for the appeal.

(b) The grievant shall be represented at the Employer's Step 3 Level by a Union's Regional representative, or designee. The Step 3 meeting of the parties' representatives to discuss the grievance shall be held within fifteen (15) days after it has been appealed to Step 3. Each party's representative shall be responsible for making certain that all

94

## Article 15.2.(Step 3)

relevant facts and contentions have been developed and considered. The Union representative shall have authority to settle or withdraw the grievance in whole or in part. The Employer's representative likewise shall have authority to grant the grievance in whole or in part. In any case where the parties' representatives mutually conclude that relevant facts or contentions were not developed adequately in Step 2, they shall have authority to return the grievance to the Step 2 level for full development of all facts and further consideration at that level. In such event, the parties' representatives at Step 2 shall meet within seven (7) days after the grievance is returned to Step 2. Thereafter, the time limits and procedures applicable to Step 2 grievances shall apply.

(c) The Employer's written Step 3 decision on the grievance shall be provided to the Union's Step 3 representative within fifteen (15) days after the parties have met in Step 3, unless the parties agree to extend the fifteen (15) day period. Such decision shall state the reasons for the decision in detail and shall include a statement of any additional facts and contentions not previously set forth in the record of the grievance as appealed from Step 2. If either party's Step 3 representative believes that an interpretive issue under the National Agreement or some supplement thereto which may be of general application is involved in the case, the issue will be discussed with the appropriate National Union/Management Representatives at the Headquarters Level. If either party's National Representative determines the issue to be interpretive, a written notice will be sent to the other party specifying in detail the facts giving rise to the dispute, the precise interpretive issues to be decided and the initiating party's contention. The grievance(s) shall be held at the Area and/or District Level pending discussion at the national level or the outcome of a National Arbitration award.

(d) The Union may appeal an adverse decision directly to arbitration at the appropriate Grievance/Arbitration Process-

95

**Article 15.2.(Step 3)**

ing Center within twenty-one (21) days after the receipt of the Employer's Step 3 decision in accordance with the procedure hereinafter set forth.

(e) Where grievances appealed to Step 3 involve the same, or substantially similar issues or facts, one such grievance to be selected by the Union representative shall be designated the "representative" grievance. If not resolved at Step 3, the "representative" grievance may be appealed to arbitration in accordance with the above and placed at the head of the appropriate arbitration docket, or the issue will be referred to the parties' national representatives at the Headquarters level pursuant to (c) above. All other grievances which have been mutually agreed to as involving the same, or substantially similar issues or facts as those involved in the "representative" grievance shall be held at Step 3 pending resolution of the "representative" grievance, provided they were timely filed at Step 1 and properly appealed to Steps 2 and 3 in accordance with the grievance procedure.

Following resolution of the "representative" grievance, the parties involved in that grievance shall meet at Step 3 to apply the resolution to the other pending grievances involving the same, or substantially similar issues or facts. Disputes over the applicability of the resolution of the "representative" grievance shall be resolved through the grievance-arbitration procedures contained in this Article; in the event it is decided that the resolution of the "representative" grievance is not applicable to a particular grievance, the merits of that grievance shall also be considered.

(f) In order to discourage the filing of multiple local grievances involving any new or changed District or Area-wide policy, instructions, or guidelines, the APWU Regional Coordinator or National Business Agent may file one grievance concerning such policy, instructions, or guidelines, directly at Step 3 of the grievance procedure. The grievance

96

**Article 15.2.(Step 4)**

may be filed within fourteen (14) days of the date on which such union representative first learned or may reasonably have been expected to have learned of the implementation of such policy, instructions, or guidelines. Timely local grievances, which had already been filed concerning such policy, instructions, or guidelines, will be held at or returned to Step 2 of the grievance procedure, as applicable, pending the resolution of the grievance filed directly at Step 3. Thereafter, local grievances will be finally adjudicated in accordance with the resolution of the grievance filed directly at Step 3. If not resolved, the grievance filed directly at Step 3 may be appealed to arbitration within twenty-one (21) days and placed at the head of the appropriate arbitration docket.

**Step 4:**

(a) In any dispute properly initiated at this Step by the appropriate National Union/Management Representative, the parties shall meet at the National level promptly, but in no event later than thirty (30) days after initiating such dispute in an effort to define the precise issues involved, develop any necessary facts and reach agreement. The Union representative shall have authority to settle or withdraw the dispute in whole or in part. The Employer's representative shall have authority to grant or settle the dispute in whole or in part. The parties' Step 4 representatives may, by mutual agreement, return any dispute to Step 3 where (a) the parties agree that no national interpretive issue is fairly presented or (b) it appears that all relevant facts have not been developed adequately. In such event, the parties shall meet at Step 3 within fifteen (15) days after the dispute is returned to Step 3. Thereafter the procedures and time limits applicable to Step 3 grievances shall apply. Should the parties at the National level fail to reach agreement, then within fifteen (15) days of such meeting each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to the interpretive dispute. In the event the parties have failed to reach agreement within

97

## Article 15.3

sixty (60) days of the initiation of the dispute, the Union then may appeal it to national arbitration within thirty (30) days thereafter. Any local grievances filed on the specific interpretive issue shall be held in abeyance at the appropriate level pending resolution of the national interpretive dispute.

[see Memo, page 316]

### Section 3. Mediation

Where the local parties identify the need for either assistance in the grievance/arbitration procedure or the need to improve the labor/management relationship, the following mediation process may be invoked:

A. The local installation head and the local Union president (local parties) may jointly initiate a request for mediation where they identify such a need in a particular installation. Such joint request must be in writing and submitted to the parties' designated Area/Regional level representatives.

B. Such Area/Regional level representatives may also recommend mediation for a particular installation. However, when a recommendation for mediation is made by the Area/Regional level representatives, such recommendation must be discussed with and agreed to by the local parties before the mediation process can be invoked at the local site.

C. The mediation will be conducted jointly by the Union official designated by the President of the Union and management official designated by the Vice President/Labor Relations (USPS). The designated officials will have been trained, and/or certified in the dispute resolution process. Such designated union/management mediation representatives will be utilized to assist the local parties in an effort to resolve timely grievances, as defined in Article 15,

98

## Article 15.3.F

Sections 1 and 2, as well as any identified local issues or problems.

D. The designated union/management mediation representatives will meet at the local installation within thirty (30) days of the joint mediation request, which is described in Section 3.A or B above. At least seven (7) days prior to the on-site meeting, the local parties will jointly provide the mediation representatives with an agenda and all available relevant information. In the event the local parties cannot agree on an agenda for mediation, each party will submit their respective agendas to the mediation representatives seven (7) days prior to the on-site meeting, as well as all available relevant information.

E. The mediation will be held with the local parties to explore ways of resolving the previously submitted agenda items, as well as to seek ways of improving the labor/management climate within the installation. The mediation process, including all meetings connected with mediation, is considered to be off-the-record. However, all resolutions will be on the record, in writing and jointly signed by the local parties. Where the local parties agree, a particular mediation resolution(s) will serve as precedent for that installation, provided such resolution does not violate the National Agreement.

If the local parties are unable to reach a resolution on pending grievances of those local issues for which they have jointly requested mediation, then the mediation representatives may jointly resolve any of the above referenced issues or grievances.

F. The Employer's mediation representative will provide to the appropriate Union official a statement of position for each grievance(s) listed on the agenda, which is not resolved through mediation, within fifteen (15) days of the final mediation meeting. Within twenty-one (21) days of

99

Article 15.4

receipt of the statement of position, the Union may appeal such grievance(s) to District level arbitration.

## Section 4. Grievance Procedure - General

A. The parties expect that good faith observance, by their respective representatives, of the principles and procedures set forth above will result in settlement or withdrawal of substantially all grievances initiated hereunder at the lowest possible step and recognize their obligation to achieve that end. **Every effort shall be made to ensure timely compliance and payment of monetary grievance settlements and arbitration awards. The Employer agrees that upon receipt of necessary paperwork from the grievant and/or union, concerning a grievance settlement or arbitration award, monetary remuneration will be made. The necessary paperwork is the documents and statements specified in Subchapter 436.4 of the ELM. The Employer will provide the union copies of appropriate pay adjustment forms, including confirmation that such forms were submitted to the appropriate postal officials for compliance and that action has been taken to ensure that affected employee(s) receives payment and/or other benefits. In the event that an employee is not paid within sixty (60) days after submission of all the necessary paperwork, such employee, upon request, will be granted authorization from management to receive a pay advance equal to the net amount due, or seventy (70) percent of the gross payment owed the employee, whichever is less. In the event of a dispute between the parties concerning the correct amount to be paid, the advance required by this section will be the amount that is not in dispute.**

B. The failure of the employee or the Union in Step 1, or the Union thereafter to meet the prescribed time limits of the Steps of this procedure, including arbitration, shall be considered as a waiver of the grievance. However, if the

100

Article 15.5.A

Employer fails to raise the issue of timeliness at Step 2, or at the step at which the employee or Union failed to meet the prescribed time limits, whichever is later, such objection is waived.

C. Failure by the Employer to schedule a meeting or render a decision in any of the Steps of this procedure within the time herein provided (including mutually agreed to extension periods) shall be deemed to move the grievance to the next Step of the grievance-arbitration procedure.

D. It is agreed that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated at the Step 4 level by either party. Such a dispute shall be initiated in writing and must specify in detail the facts giving rise to the dispute, the precise interpretive issues to be decided and the contention of either party. Thereafter the parties shall meet in Step 4 within thirty (30) days in an effort to define the precise issues involved, develop all necessary facts, and reach agreement. Should they fail to agree, then, within fifteen (15) days of such meeting, each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to such issues. In the event the parties have failed to reach agreement within sixty (60) days of the initiation of the dispute in Step 4, the Union then may appeal it to arbitration, within thirty (30) days thereafter. Any local grievances filed on the specific interpretive issue shall be held in abeyance at the appropriate level pending resolution of the national interpretive dispute.

## Section 5. Arbitration

A. **General Provisions**

1. A request for arbitration shall be submitted within the specified time limit for appeal.

101

2. No grievance may be arbitrated at the National level except when timely notice of appeal is given by the National President of the Employer in writing by the National President of the Union. No grievance may be appealed to arbitration at the District panel level except when timely notice of appeal is given in writing to the appropriate management official at the Grievance/Arbitration Processing Center by the certified representative of the Union in the Area. Such representative shall be certified to appeal grievances by the National President of the Union to the Employer at the National level.

3. All grievances appealed to arbitration will be placed on the appropriate pending arbitration list in the order in which appealed. The Employer, in consultation with the Union, will be responsible for maintaining appropriate dockets of grievances, as appealed, and for administrative functions necessary to assure efficient scheduling and hearing of cases by arbitrators at all levels.

4. In order to avoid loss of available hearing time, except in National level cases, a minimum of six (6) expedited or three (3) regular cases, when available, are to be scheduled for each hearing date. In addition, pending cases on the docket in the order in which appealed should be assigned to the designated advocates no less than sixty (60) days prior to the scheduled date and, if possible, the parties will discuss the cases no less than thirty (30) days prior to the scheduled date. The parties agree that backup cases will include all cases pending arbitration at the location. These backup cases will be scheduled in the order they appear on the District docket when available in the event of late settlement or withdrawal of grievances before the hearing. In the event that either party withdraws all cases less than

five (5) days prior to the scheduled arbitration date, and the parties are unable to agree on scheduling other cases on that date, the party withdrawing the cases shall pay the full costs of the arbitrator for that date. In the event that the parties settle and/or withdraw all cases five (5) or more days prior to the scheduled arbitration date, backup cases on the appropriate arbitration list shall be scheduled. If the parties settle cases less than five (5) days prior to the scheduled arbitration date and are unable to agree to schedule another case, the parties shall share the costs of the arbitrator for that date. This paragraph shall not apply to National level arbitration cases.

5. Arbitration hearings normally will be held during working hours where practical. Employees whose attendance as witnesses is required at hearings during their regular working hours shall be on Employer time when appearing at the hearing, provided the time spent as a witness is part of the employee's regular working hours. Absent a more permissive local past practice and at no cost to the Employer, the Employer will permit one (1) change of work schedule per case scheduled for arbitration for either the grievant or a witness, provided notice is given to his or her immediate supervisor at least two (2) days prior to the scheduled arbitration hearing.

6. All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. Unless otherwise provided in this Article, all costs, fees, and expenses charged by an arbitrator will be shared equally by the parties.

## Article 15.5.A.7

7. All arbitrators on the Regular District Panels and the Expedited Panels and on the National Panel shall serve for the term of this Agreement and shall continue to serve for six (6) months thereafter, unless the parties otherwise mutually agree.

8. Arbitrators on the National Panel and on the Regular and Expedited District Panels shall be selected by the method agreed upon by the parties at the National Level.

9. In any arbitration proceeding in which a Union feels that its interests may be affected, it shall be entitled to intervene and participate in such arbitration proceeding, but it shall be required to share the cost of such arbitration equally with any or all other Union parties to such proceeding. Any dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator. The arbitrator's determination shall be final and binding.

### B. District Level Arbitration - Regular

1. At the appropriate Grievance/Arbitration Processing Center four (4) separate lists of cases to be heard in arbitration shall be maintained for the Union: (a) one for all removal cases and cases involving suspensions for more than 14 days or 14 days or less referred from Expedited Arbitration, (b) one for all cases referred to Expedited Arbitration, (c) one for Contract disputes, and (d) one for Impasses from Local Negotiations appealed to arbitration at the appropriate Grievance/Arbitration Processing Center. In each District separate panels will be established for scheduling and hearing cases involving (a) removals and suspensions for more than 14 days, and suspensions of 14 days or less referred from Expedited Arbitration; (b) Contract
## Article 15.5.B.5

disputes, (c) cases referred to Expedited Arbitration, and (d) Impasses from Local Negotiations.

a. Arbitration hearings are to be scheduled and heard within 120 days following receipt of the arbitration appeal, unless the parties agree upon a later date.

[see Memo, page 317]

2. Cases will be scheduled for arbitration in the order in which appealed, unless the Union and Employer otherwise agree. **Prior to arbitration dates being scheduled by the parties for the next round of scheduling, each party may, at its option, advance one case per month to the top of the docket.**

3. Only discipline cases involving suspensions of 14 days or less and those other disputes as may be mutually determined by the parties shall be referred to Expedited Arbitration in accordance with Section C hereof.

[see Memo, page 311]

4. Cases referred to arbitration, which involve removals or suspensions for more than 14 days, shall be scheduled for hearing at the Grievance/Arbitration Processing Center at the earliest possible date in the order in which appealed by the Union.

5. If either party believes that a case referred to Regular Arbitration involves an interpretative issue under the National Agreement or some supplement thereto which may be of general application, that party's representative shall request input from their appropriate National Representative at the

**Article 15.5.B.5**

Headquarters level. If either party's representative at the Headquarters level determines the case is interpretive, a notice will be sent to the other party. The case will be held pending the outcome of the National interpretive dispute. If both parties' representatives determine the case does not involve an interpretive issue, the case if already scheduled for arbitration will be heard before the same arbitrator who was originally scheduled to hear the case. Further, if the hearing had convened, the case will continue at the same stage of arbitration.

[see Memo, page 316]

6. The arbitrators on each Regular District Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties. The hearing time available for arbitration will be distributed among offices and crafts.

7. Normally, there will be no transcripts of arbitration hearings or filing of post-hearing briefs in cases heard in Regular District level arbitration, except either party at the National level may request a transcript. Either party at the hearing may request to file a post-hearing brief in contract arbitrations. In Regular District level discipline/discharge arbitrations, post-hearing briefs will be permitted only by mutual agreement of the parties or by direction of the arbitrator. However, each party may file a written statement setting forth its understanding of the facts and issues and its argument at the beginning of the hearing and also shall be given an adequate opportunity to present argument at the conclusion of the hearing.

8. The arbitrator in any given case should render an

106

**Article 15.5.C.3**

award therein within thirty (30) days of the close of the record in the case.

**C. District Level Arbitration - Expedited**

1. The parties agree to continue the utilization of an expedited arbitration system for disciplinary cases of 14 days suspension or less which do not involve interpretation of the Agreement and for such other cases as the parties may mutually determine.

[see Memo, page 311]

2. If either party concludes that the issues involved are of such complexity or significance as to warrant reference to the Regular District Arbitration Panel, that party shall notify the other party of such reference at least twenty-four (24) hours prior to the scheduled time for the expedited arbitration.

3. The hearing shall be conducted in accordance with the following:

   a. the hearing shall be informal;

   b. no briefs shall be filed or transcripts made;

   c. there shall be no formal rules of evidence;

   d. the hearing shall normally be completed within one day;

   e. if the arbitrator or the parties mutually conclude at the hearing that the issues involved are of such complexity or significance as to warrant reference to the Regular District Arbitration Panel, the case shall be referred to that panel; and

107

Article 15.5.C.3.f

f.  the arbitrator may issue a bench decision at the hearing but in any event shall render a decision within forty-eight (48) hours after conclusion of the hearing. Such decision shall be based on the record before the arbitrator and may include a brief written explanation of the basis for such conclusion. These decisions will not be cited as a precedent. The arbitrator's decision shall be final and binding. An arbitrator who issues a bench decision shall furnish a written copy of the award to the parties within forty-eight (48) hours of the close of the hearing.

4.  No decision by a member of the Expedited Panel in such a case shall be regarded as a precedent or be cited in any future proceeding, but otherwise will be a final and binding decision.

5.  The Expedited Arbitration Panel shall be developed by the National parties, on a District level.

D.  **National Level Arbitration**

1.  Only cases involving interpretive issues under this Agreement or supplements thereto of general application will be arbitrated at the National level.

2.  A docket of cases appealed to arbitration at the National level shall be maintained for the Union. The arbitrators on the National Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties. Cases on the docket will be scheduled for arbitration in the order in which appealed, unless the Union and Employer otherwise agree.

108

---

Article 16.1

**Section 6. Administration**

The parties recognize their continuing joint responsibility for efficient functioning of the grievance procedure and effective use of arbitration. Commencing April 1, 1979, and quarterly thereafter, the Employer will furnish to the President of the Union a copy of a quarterly report containing the following information covering operation of the arbitration procedure at the National level, and for each Grievance/Arbitration Processing Center separately:

(a) number of cases appealed to arbitration;

(b) number of cases scheduled for hearing;

(c) number of cases heard;

(d) number of scheduled hearing dates, if any, which were not used;

(e) the total number of cases pending but not scheduled at the end of the quarter.

(The preceding Article, Article 15, shall apply to Transitional Employees)

[see Memo, page 317]

## ARTICLE 16
## DISCIPLINE PROCEDURE

**Section 1. Principles**

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to,

109