

## REGULAR ARBITRATION PANEL

| | |
|---|---|
| In the Matter of the Arbitration | ( Grievant:  Class Action |
| between | ( Post Office:  Renton, Washington |
| UNITED STATES POSTAL SERVICE | ( USPS Case No.:  E00C-4E-C 02224433 |
| and | ( APWU Case No.:  200202 |
| AMERICAN POSTAL WORKERS UNION, AFL-CIO | ( |

BEFORE:                           Alan R. Krebs, Arbitrator

APPEARANCES:

   For the U.S. Postal Service:  Carol A. Manago

   For the Union:                Brian Dunn

Place of Hearing:                 Renton, WA

Date of Hearing:                  September 14, 2005

Date of Receipt of Briefs:        October 31, 2005

Date of Award:                    November 28, 2005

Relevant Contract Provisions:     Articles 1.6.A and 3.C and D

Contract Year:                    2000-2003

Type of Grievance:                Class Action

### AWARD SUMMARY

    The grievance is sustained. The Postal Service violated the National Agreement by reassigning to supervisors the timekeeping work previously performed by clerks and remaining after the implementation of TACS. The Postal Service is ordered to return such work to the bargaining unit.

/s/ Alan R. Krebs
Alan R. Krebs, Arbitrator

EXHIBIT
B

## ISSUE

The parties, being unable to agree upon a stipulated statement of the issue to be decided, agreed to have it framed by the Arbitrator. Having considered the testimony and arguments, your Arbitrator frames the issue as follows:

> Did the Postal Service violate the National Agreement when it newly assigned certain timekeeping work to supervisory personnel upon implementing the Time & Attendance Collection System (TACS) at the Renton, Washington Post Office?

> If so, what is the appropriate remedy?

## FACTS

Millie Burns worked as a timekeeper clerk at the Renton Post Office for twenty years until she retired on June 1, 2002. In 1993 or 1994, the Postal Service implemented the Electronic Time Card (ETC) computer system for recording employees' work time in some post offices. Before the ETC system was implemented in Renton, Ms. Burns worked eight hours per day on her timekeeping functions. With the efficiencies introduced by the ETC system, her timekeeping duties were reduced to between four and six hours per day by the time of her retirement. She continued to work eight hours per day by assuming other duties, in addition to her timekeeping duties. When she retired, her duties included timekeeping for the three branches of the Renton Post Office, boxing, and relief window work, and her position title was sales & service associate/distribution clerk.

Ms. Burns' timekeeping duties were varied. They included correcting errors in clock rings, such as when employees had neglected to swipe their badges in the electronic badge reader when they went on or off duty. Some of these errors were corrected with the employee filling out a Form 1260 card, a supervisor signing off on the change, and then Ms. Burns inputting the information from that card into the ETC computer program. Ms. Burns would ensure that employees who are late,

absent, or on leave of some type, submitted Form 3971. She would enter the information from Form 3971 into the ETC computer program after the form was signed by a supervisor. In a similar manner, she would enter into the ETC program the data from Form 3189, Request for Temporary Schedule Change for Personal Convenience. In addition, she printed out a number of reports from the ETC program, monitored overtime, maintained files, ordered badges for new employees and performed other similar clerical duties. When Ms. Burns was on vacation, other clerks performed her timekeeping duties. There was no evidence that supervisors performed these duties at the Renton Post Office prior to Ms. Burns' retirement.

In 1997, the Postal Service advised the Union that it planned to replace the five timekeeping systems which it operated throughout the country, including ETC, with a single system, the Time and Attendance Collection System (TACS). The parties, at the national level, met to discuss the implementation of TACS. On April 13, 2001, they signed a letter of agreement which included the following understanding:

> <u>Grievance Handling</u>
> The parties understand that any grievances involving local fact circumstances, arising from the implementation of TACS are appropriate for local discussion, resolution, or arbitration, if necessary, based on the fact circumstances of those grievances.

The Postal Service and the Union agree that TACS is more efficient than the previous timekeeping systems which were utilized. Unlike the previous systems, TACS is web based, and can be accessed by supervisors on their computers for review and data input. Records are continuously updated, allowing supervisors to utilize their computers to immediately determine where employees are working. Certain duties formerly performed by timekeeping clerks were eliminated because of TACS. For instance, before TACS, timekeeping clerks would update employees' master files based on information obtained from Human Resources. TACS is now linked with the Human Resources computer system so that the master files in the post office computers are

3

automatically updated when Human Resources enters new data. With ETC, timekeepers would manually poll clock rings. TACS automatically transfers the clock rings into the system. ETC required timekeepers to use and store computer disks. TACS does not rely on disks to store information. Prior to the implementation of TACS, timekeepers were required to print out and distribute a number of reports. These duties have been eliminated since the reports can be readily accessed by supervisors on their computers.

The Postal Service implemented TACS at the Renton Post Office on June 3, 2002. Helen Pelton was the postmaster at Renton Post Office when TACS was implemented. She testified that prior to its implementation, she discussed TACS with the local Union president. Ms. Burns had been advised that with the implementation of TACS, she would no longer perform timekeeping duties. Rather than accept another assignment, Ms. Burns elected to retire when TACS was implemented at the Renton Post Office. As previously explained, TACS eliminated many of the duties which she performed. Some of her duties were transferred to the eight TACS clerks now working in the Seattle District office. Betty Lock, the manager of TACS operations for Seattle District, testified that the District employs one TACS clerk for each 1500 employees. She testified that the TACS clerks do not do data entry. Rather, they monitor the local offices for compliance with the requirements of TACS. Pat Queen, the manager of accounting center support for the St. Louis accounting service center, testified that clerks at the District level review rings to ensure everyone is current, obtain badges for employees, and file timekeeping documents. Inputting of timekeeping data into TACS at the Renton Post Office, such as from Forms 3971, 1260, and 3189 which are still utilized, is now performed by supervisors at the Renton Post Office. Ms. Queen testified that with TACS, payroll adjustments can be done more quickly by supervisors on the computer than was done under the prior practice. She testified that TACS has resulted in a nationwide decrease in payroll adjustments. Ms. Pelton testified that with

the implementation of TACS, there was no increase in the supervisory staff at Renton Post Office.

On June 27, 2002, the Union filed a grievance protesting the removal of timekeeping duties from the clerk craft and the assumption of such work by management. At Step 1, the grievance was denied on the basis that local management was implementing a national program. At the Step 2 meeting, Postmaster Pelton similarly advised Union Local President Donald Matt that she was denying the grievance because she was implementing a national system. In her written Step 2 decision, Postmaster Pelton explained that the Postal Service had the right to assign timekeeping duties to supervisors because such assignments relate "to workforce performance issues as well as expediting the identification of problems as a result of time and attendance issues," and "[b]oth in turn directly relate to the operational efficiency of the operation, which is vested in management." She further explained, "Put simply, the handling of time and attendance is a natural integration and extension of the supervisor's obligation to monitor the work location he/she supervises." In an "Additions and Corrections" document and in the Union's Step 3 appeal, submitted by Mr. Matt, he maintained that it would be more costly to have supervisors perform TACS duties, rather than the clerk craft. In the Service's Step 3 decision, the Service maintained "[i]ts right to factor in operational efficiency" in deciding which timekeeping tasks "would be performed by supervisors or members of the bargaining unit."

Rather than making closing oral arguments at the conclusion of the arbitration hearing in this matter, the parties agreed to submit post hearing briefs. Those briefs were received by the Arbitrator on October 31, 2005. The Union submitted 32 complete

decisions along with its 64-page brief. The Postal Service submitted 8 decisions with its 24-page brief.[1]

## POSITION OF THE PARTIES

The Union contends there is a binding past practice at the Renton Post Office of clerk employees performing timekeeping duties. The Union argues that this past practice gives the Union at least an initial presumption of ownership of this timekeeping work. The Union maintains that the Postal Service is obligated to provide evidence of a specific operational necessity or a substantial efficiency reason for ending this practice and, in addition, must bargain with the Local Union over the matter. The Union asserts that other than indicating that TACS was a national initiative, the Postal Service never, during the processing of the grievance or at arbitration, offered any reasoning for the transfer of the work which is specific to the Renton Post Office. According to the Union, the duties that had been performed by the bargaining unit at Renton Post Office which still remain after the implementation of TACS should remain the duties of the bargaining unit. Accordingly, the Union argues, supervisors should not be filing documents and entering "leave, schedule changes, higher level pay, overtime, operational function codes and the like."

The Postal Service contends that it acted in accordance with Article 3 of the National Agreement to maintain the efficiency of the operation when it implemented TACS. It maintains that TACS promoted the efficiency of input and quick retrieval of data, facilitated the consolidation of supervisory tasks, as well as the functioning of several systems, eliminated many of the tasks associated with timekeeping, such as producing a significant

---

[1] By letter received by the Arbitrator on November 3, 2005, the Union protested that the Postal Service in its brief had quoted Handbook F-21 when that document had not been submitted into evidence during the hearing. The Union's letter indicated that a copy had been sent to the representative for the Postal Service. In fact, Handbook F-21 was never referenced in the moving papers or during the Arbitration hearing. Since that portion of the Postal Service brief contains new evidence and argument which the Union has not had the opportunity to rebut, it has not been addressed in this Opinion.

6

number of hard copy documents, and improved efficiency in the pay adjust rate. The Postal Service observes that with TACS, supervisors are now in the position to authorize an employee's time and input it into the system at the same time. The Postal Service asserts that the change to TACS was not a unilateral action, inasmuch as it was discussed at national level meetings and was the topic of informational meetings for Union and Management officials throughout the country. The Postal Service points out that its Step 2 and Step 3 decisions documented its position that its actions were based on operational efficiency. The Postal Service argues that its actions followed Arbitrator Snow's findings in National Decision AC-N-6922 where he determined that timekeeping tasks were not bargaining unit work.

## DISCUSSION

While Article 3.C and D of the National Agreement reserves to the Employer the right "[t]o maintain the efficiency of the operations" and "[t]o determine the methods, means, and personnel by which such operations are to be conducted," it also provides that such rights are "subject to the provisions of this Agreement." Article 1.6.A of the National Agreement specifically provides that "[s]upervisors are prohibited from performing bargaining unit work at post offices with 100 or more bargaining unit employees," such as the Renton Post Office, except in certain specified circumstances which are not applicable here. The parties do not define "bargaining unit work" in the National Agreement. As a result, that language has been at the center of considerable controversy between the parties.

In a National Award, Arbitrator Carlton Snow found that at the time that the restriction on supervisors performing bargaining unit work was negotiated, the parties understood it to apply "to the core clerk functions of processing the mail and

performing window service." Case No. A-C-N-6922 (1990), p. 51. Arbitrator Snow, in this decision, stated that there are other functions performed by clerks, such as timekeeping, which fall in a "gray area" and that such work may be deemed to be bargaining unit work if established by past practice. Relying on the writing of Arbitrator Richard Mittenthal in "Past Practice and the Administration of Collective Bargaining Agreements," Proceedings of the Fourteenth Annual Meeting, National Academy of Arbitrators (1961), Arbitrator Snow stated that:

> ...activity rises to the level of a past practice where it has (1) clarity and consistency; (2) longevity and repetition; and (3) acceptability.

*Id.*, p. 47. Arbitrator Snow stated that despite a past practice of clerks performing "gray area" work, supervisors may still perform this work if it would be more practical or efficient for them to do so. Arbitrator Snow quoted from a National Award issued by Arbitrator Sylvester Garrett in 1978, a case which was jointly submitted to the Arbitrator at the hearing in the dispute at hand. Arbitrator Snow interpreted the Garrett decision to mean that "management must advance its goal of efficiency without sacrificing bargaining unit positions or hours, to the extent possible." *Id.*, at p. 24. Arbitrator Snow found that in the particular situations presented to him, both supervisors and clerks performed timekeeping functions, and therefore no binding past practice was established. Still, Arbitrator Snow, in the following passage indicated that supervisors "should not always perform" the timekeeping functions, but may do so if it is more practical or operationally efficient:

> It is important to stress that supervisors should not always perform the functions at issue here. At the same time, because the disputed functions have not

> been contractually dedicated to members of the bargaining unit, supervisors must be able to perform them if it is more practical for them to do so or if there are good faith reasons of operational efficiency behind the performance of such duties.

*Id.*, pp. 55-56.

In a later National Award, Case No. H4C-4H-C25455 (2001), Arbitrator Snow provided some clarification. In that case Arbitrator Snow determined that the Postal Service violated the National Agreement by assigning "gray area" bargaining unit work to nonbargaining unit personnel department employees at a particular location. Arbitrator Snow found that the disputed work had been assigned within the bargaining unit for many years. Reasoning that in the "gray areas" nonbargaining unit employees "must be able to perform [disputed functions] if there are good faith reasons of operational efficiency behind the performance of such duties," Arbitrator Snow sustained the grievance, because, as he stated, in the situation before him, he found "no persuasive evidence that there are exclusive overlapping duties ... or that management distributed assignments in this case based on fundamental concerns about operational efficiency...." *Id.*, pp. 27-28. In other words, Arbitrator Snow determined that in order to reassign bargaining unit work out of the clerk craft bargaining unit, where such work is in the "gray area" and not core clerk functions and there has been a past practice of such work being assigned exclusively to bargaining unit employees at a particular location, there must be persuasive evidence that the reassignment was based on operational efficiency. The parties appeared to have accepted this interpretation in a National Settlement signed on December 21, 1998. That settlement dealt with whether supervisors may perform timekeeping duties involving the ETC system. As can be seen from the portions of

9

that National Settlement quoted below, the parties agreed that the question of whether supervisors may perform the remaining timekeeping duties with the advent of new technology, is dependent on whether such an assignment is justified by facts which establish that is "operationally more efficient" at the local level to have supervisors performing such work:

> The issue in this grievance is whether or not supervisors may perform duties involving the electronic timekeeping clock (ETC).
>
> The parties agreed that Arbitrator Snow in national case AC-N-6922 et. al., has already determined that timekeeping duties can be performed by supervisors when it is operationally efficient for them to do so....
>
> Whether or not it is operationally more efficient for the supervisor to perform the remaining timekeeping functions, if any, is a factual determination best left to the local parties. Therefore, this case is remanded to the parties at Step 3 for possible resolution or to schedule for regional arbitration as appropriate.

Similarly, as previously discussed, with the advent of TACS, the parties, at the national level, agreed "that any grievances involving local fact circumstances, arising from the implementation of TACS" are to be dealt with at the local level "based on the fact circumstances of those grievances."

At the Renton Post Office, it is undisputed that clerk craft employees, and not supervisors, exclusively performed timekeeping tasks such as entry of timekeeping data into the computer, preparation of timekeeping reports, monitoring of clock rings, monitoring timekeeping files, ordering of badges, and a variety of other timekeeping related duties. This practice existed for many years until the time that TACS was implemented at the Renton Post Office. This exclusive assignment of such timekeeping duties within the bargaining unit

rose to the level of a binding past practice at the Renton Post Office since the past practice was clear and consistent, long and repeated, and was accepted by both parties. The Union correctly points out that past practice may lose its binding effect when there has been a substantial change in the conditions from which the past practice arose. In the case at hand, there has been a change in circumstances with regard to some, but not all the timekeeping duties, such that the Postal Service is no longer bound to assign to bargaining unit employees all of the timekeeping duties that they performed in the past. Thus, with the implementation of TACS, certain timekeeping work was eliminated. These tasks were either automated as the case with the polling of clock rings or were no longer needed, as was the case with the printing and distribution of certain attendance reports. Such work cannot be claimed by the bargaining unit since it no longer exists. However, other timekeeping duties previously performed by the clerk craft do still exist. Some of that work has been transferred to clerk craft employees at the District office, such as reviewing clock rings, obtaining badges, and certain filing. The Postal Service retains the right to make such work assignment decisions within the bargaining unit.

Other work was transferred from the bargaining unit to supervisors at the time TACS was implemented in the Renton Post Office. This includes entry of timekeeping data into the computer and, presumably, filing or processing of timekeeping forms. If assignment of such work to supervisors improved operational efficiency, then, as indicated in Arbitrator Snow's National Awards discussed previously, such assignments are no longer exclusively limited to the bargaining unit, despite the past practice. In essence, if the change in technology made it more efficient for supervisors rather than clerks to perform the

remaining timekeeping duties, the circumstances underlying the past practice of assigning this work to the clerk craft would have changed such that the past practice may be discontinued. Absent proof of improved operational efficiency which would result from such reassignments, then the work still belongs to the bargaining unit.

Inasmuch as the Union has established a past practice at the Renton Post Office of certain timekeeping duties being assigned exclusively to the clerk craft, the burden shifts to the Postal Service to prove that the reassignment of such timekeeping duties to supervisors improves operational efficiency. Absent such proof by the Post Service, many regional arbitrators have held that such reassignments of timekeeping work out of the bargaining unit violated the National Agreement. Case No. 190C-4C-93018110 (Goldstein, 1994); Case No. B90C-4B-C (Simmelkjaer, 1997); Case No. G00C-4G-C 02145450 (Odom, 2003); Case No. E00C-4E-C 02189076 (Winston, 2003); Case No. E98C-1E-C 01090284 (Martin, 2004); Case No. E00C-4E-C 03168751 (Gilder, 2004); Case No. E00C-4E-C 02242735 (Suardi, 2005); Case No. C00C-4C-C 02232669 (Newman, 2005); Case No. C00C-4C 02235737 (Fullmer, 2005).

Here, the Postal Service has not met its burden of proving that the reassignment to supervisors of timekeeping duties previously performed by bargaining unit personnel would improve operational efficiency. It is undisputed that TACS is more efficient than the ETC system which was previously in effect at the Renton Post Office. In any event, both TACS and ETC require the entry of data into the computer. Many of the same timekeeping forms are utilized and processed under both systems. There was just insufficient proof presented at hearing that supervisors at Renton Post Office would perform these timekeeping tasks more efficiently than clerks. For instance,

the Postal Service has not demonstrated that it is more efficient for supervisors at the Renton Post Office to input data into the computer from forms such as 3971s than for clerks to continue performing these entries. In fact, there was no evidence in this regard which was specific to the Renton Post Office other than that no new supervisors were added. Bargaining unit duties cannot be transferred to supervisors merely because supervisors have time in their assigned schedule to perform additional work. Other regional arbitrators have sustained grievances regarding the transfer of timekeeping work to supervisors upon the implementation of TACS based on such insufficiency of proof by the Postal Service. Case No. H98C-1H-C 01250020 (Tranen, 2003); Case No. E00C-4E-C 02189076, *supra*; Case No. E98C-4E-C 01156983 (Escamilla, 2004); Case No. E00C-4E-C 02242735, *supra*; E98C-4E- 99247536 (Massey, 2005).

I have carefully considered the regional opinions submitted by the Postal Service which held that in particular post offices, the reassignment of timekeeping work from the clerk craft to supervisors was justified by operational efficiencies introduced with TACS. Case No. E00C-4E-C 021590695 (Klein, 2003); Case No. G98C-4G-C 01072121 (Gilder, 2003); Case No. E00C-4E-C 02186502 (Allen, 2005); Case No. F00C-4F-C 02172398 (Davis, 2005). I find the cases submitted by the Union to be more persuasive with regard to the facts presented here. As in those cases, the Postal Service has not proven that its transfer of bargaining unit work to supervisors was justified by operational efficiencies at the local level.

In sum, the Union established a binding past practice at the Renton Post Office in that certain timekeeping duties had been exclusively bargaining unit work for many years. With the introduction of TACS certain of these duties were eliminated and properly lost to the bargaining unit. Other timekeeping duties

performed by clerks before TACS was introduced at Renton Post Office, essentially remained after TACS was introduced. The Postal Service has not proven that the reassignment of these timekeeping duties from the clerk craft to supervisors was justified by improved operational efficiency at the Renton Post Office. Therefore, the Postal Service violated the National Agreement by reassigning timekeeping work from the clerk craft to supervisors when it implemented TACS at the Renton Post Office.

### AWARD OF THE ARBITRATOR

The grievance is sustained. The Postal Service violated the National Agreement by reassigning timekeeping work from the clerk craft to supervisors at the Renton Post Office. The employee who had performed the timekeeping duties at issue retired when TACS was implemented. Moreover, those duties have been substantially reduced with the new technology. Some of the remaining duties were reassigned to clerks in the District office. The amount of bargaining unit work improperly assigned to supervisors is not evident from the facts presented. In these circumstances, an award of back pay would be particularly problematic and would not be fair. The Postal Service shall reassign the remaining timekeeping duties which had previously performed by Ms. Burns and is now being performed by supervisors back to the bargaining unit.

Dated: November 28, 2005
Sammamish, Washington

/s/ Alan R. Krebs
Alan R. Krebs, Arbitrator