UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 06-00934(RJL) ) |
| UNITED STATES POSTAL SERVICE, | ) ) |
| Defendant. | ) ) ) |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the U.S. Postal Service, by and through its undersigned attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed R. Civ. P. 56"), hereby respectfully moves for summary judgment in this case brought pursuant to the Postal Reorganization Act, 39 U.S.C. §§ 409 and 1208, on the grounds that there are no genuine issues in dispute and, that indeed, the facts in the case establish that defendant is entitled to judgment as a matter of law. Defendant further requests that this Court deny Plaintiff's Motion for Summary Judgment.

A statement of material facts as to which there is no genuine dispute, a memorandum of points and authorities in support of this motion, the declaration of a responsible agency official, and a proposed Order are filed herewith.

Respectfully submitted,

/s/ Jeffrey A. Taylor /dvh

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras

_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell

_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office, District of Columbia
555 Fourth St., N.W., Room E-4915
Washington, D.C. 20530
Ph:  (202) 307-0492

Of counsel:
H. Alexander Manuel
United States Postal Service

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 06-00934(RJL) |
| UNITED STATES POSTAL SERVICE, | ) ) ) |
| Defendant. | ) ) |

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Defendant United States Postal Service ("USPS" or "Postal Service"), files this memorandum in opposition to plaintiff's motion for summary judgment. This is an action seeking enforcement of an arbitral award at the Renton, Washington post office. The Postal Service does not object to enforcement of the award insofar as it pertains to the Renton, Washington post office. The Postal Service maintains that plaintiff, American Postal Workers Union ("APWU"), is seeking to expand the award well beyond the remedies ordered by the arbitrator, and the Postal Service objects to that expansion.

The arbitration award at issue, known as the "Krebs Award",[1] found that USPS supervisors were improperly performing certain timekeeping duties that should have been performed by APWU bargaining unit employees.  See Ex. 1, Declaration of Clifton W. Wilcox, Attach. C.  Significantly, however, the arbitrator expressly recognized that many of these duties no longer existed after the Postal Service implemented its new, timekeeping system known as the Time and Attendance Collection System ("TACS").  Specifically, Arbitrator Krebs held that:  "With the introduction of TACS certain of these [timekeeping] duties were eliminated and properly lost to the bargaining unit."  Id. at 13.  In fact, the total universe of duties at issue were those performed by one employee, Ms. Millie Burns, at one post office, for 4 – 6 hours per day, before TACS was implemented.  Id. at 2.

In addition to recognizing that automation has eliminated many of the part-time duties formerly performed by Ms. Burns, the arbitrator further acknowledged that some of her work was properly transferred to bargaining unit employees at the district office:

---

[1] USPS and APWU, No. E00C-4E-C 02224433 (Krebs, November 28, 2005), hereinafter referred to as the "Krebs Award".  In this case, the arbitrator found that the Postal Service did not meet its burden of proving that it was more efficient to have supervisors perform online data entry duties rather than have those duties performed by the bargaining unit.  Without attempting to relitigate that finding, the Postal Service draws the court's attention to page 11 of the Krebs Award, where the arbitrator acknowledged binding national precedent holding that if a change in technology makes it "more efficient for supervisors rather than clerks to perform the remaining timekeeping duties", then such practice would not violate the collective bargaining agreement.(citing United States Postal Service and American Postal Workers Union, No. A-C-N-6922 at 55-56 (1990)).  Moreover, under the collective bargaining agreement, and by its own terms, the Krebs Award is strictly limited in application to the Renton, Washington post office facility, itself.

> The employee who had performed the timekeeping duties at issue retired when TACS was implemented. Moreover, those duties have been substantially reduced with the new technology. Some of the remaining duties were reassigned to clerks in the District office. The amount of bargaining unit work improperly assigned to supervisors is not evident from the facts presented. In these circumstances, an award of back pay would be particularly problematic and would not be fair. The Postal Service shall reassign the remaining timekeeping duties which had previously [been] performed by Ms. Burns and is now being performed by supervisors back to the bargaining unit.

Id. at 14. Accordingly, only the duties that remained after taking these considerations into account, were required to be reassigned. Id. However, in this action, the plaintiff seeks a transfer of "all duties associated with [the new timekeeping system]." Compl., p. 3.

The Postal Service opposes plaintiff's motion for summary judgment on three principal grounds:

1) the Postal Service has complied with both the letter and spirit of the arbitration award at issue in this case when it notified the APWU that it was willing to reassign all timekeeping duties currently being performed by supervisors in the Renton, Washington post office, back to the bargaining unit, so long as those same duties were previously performed by the bargaining unit timekeeper (the "remaining duties");

2) to the extent that plaintiff seeks reassignment of additional duties beyond the remaining duties, plaintiff misinterprets the requirements of the arbitration award at issue; and

3) to the extent that the award is ambiguous, the Court should remand this matter back to the original arbitrator.

3

In order to define these remaining, post-TACS timekeeping duties in Renton, Washington, the Postal Service engaged in numerous discussions with the APWU, and issued two written statements specifically setting forth those duties.

Plaintiff has attached to its motion for summary judgment a letter from the Postal Service proposing to return timekeeping duties to the bargaining unit. That letter states: "The following remaining clerk timekeeping duties formerly performed by Ms. Burns will be reassigned to a clerk in each Renton Station as needed." See Pl.'s Mot. Summ. J. ("Pl.'s Mot."), Declaration of Donald Curtis Matt (Ex. C attached thereto).

This letter plainly substantiates the Postal Service's efforts to return the remaining timekeeping duties to the bargaining unit. Incredibly, however, plaintiff asserts that the Postal Service "continues to defy Arbitrator Krebs' award." Pl.'s Mem. P.&A., at 2. The Postal Service maintains that it is plaintiff who is defying the Krebs Award, since it seeks to expand the duties encompassed by the award. The Postal Service is not required to allow the bargaining unit to perform timekeeping duties that no longer exist, or that are newly-created under TACS. See e.g. Green v. Ameritech Corp., 200 F.3d 967, 977 (6th Cir. 2000)(stating that where an arbitration award "although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." The circuit court went on to suggest that the proper course in these situations is for the parties to seek clarification directly from the arbitrator.) .

The Postal Service maintains that the plain language of the Krebs Award demonstrates that plaintiff is not entitled to summary judgment requiring return of "all duties directly associated with the new TACS technology", Pl.'s Compl. at 3, as demanded in the complaint. The Postal Service does not oppose enforcement of the award, itself. Rather, it is plaintiff's misinterpretation of that award that the Postal Service opposes. Alternatively, if the language of the Krebs Award is found to be sufficiently ambiguous, the Court, in its discretion, is requested to remand this case back to the arbitrator for clarification.

IV.   STATEMENT OF THE ISSUE

Whether plaintiff may expand the remedy ordered by the arbitrator.

V.   STATEMENT OF THE FACTS

Pre-TACS Environment

Prior to June, 2002, the timekeeper at the Renton, Washington Post Office utilized an automated timekeeping system known as the Electronic Time Clock ("ETC") to record employee work hours, and to maintain timekeeping records. ETC was a localized, personal computer-based system that required manual input, storage, and transmission of employee work hours. Only one employee, Ms. Millie Burns, was needed to perform all of the timekeeping duties for the Renton, Washington Post Office. Her timekeeping duties only took four to six hours per day to complete. Ex. 1, Wilcox Decl. (Attach C, Krebbs Award, at 2).

The duties performed by Ms. Burns consisted of polling and correction of work hour data known as "clock rings", collected from employee punch cards. Clock rings

5

would typically need to be corrected when an employee neglected to swipe their employee badge when going on or off their shift, or when an employee mistakenly swiped the wrong employee badge. Ms. Burns also input data from leave authorization forms, or as directed by the supervisor on other written change authorizations. Other duties performed by Ms. Burns included printing and distributing timekeeping reports for use by management, monitoring overtime hours, maintaining files, ordering employee badges and related clerical duties. Id. at 3.

Implementation of TACS

In 1997, the Postal Service notified the APWU that it planned to replace ETC with a state-of-the-art timekeeping system known as TACS.[2] By all accounts, TACS provided significant operational efficiencies over ETC. TACS provided "real-time" electronic data that was automatically input into the system the instant employees clocked in or out. TACS was also designed to integrate information from the Postal Service's databases maintained by the Human Resources Department such as the

---

[2] After numerous discussions regarding the impact of TACS upon bargaining unit work, the parties reached a written agreement on April 13, 2001, wherein they agreed that any future grievances regarding the implementation of TACS at local facilities would be handled through the local grievance process rather than at the national level. TACS was deployed at the Renton, Washington Post Office in June, 2002. At that time, the National Agreement in effect was known as the "2000 National Agreement", which had an effective date of December 18, 2001, and which continues in effect, through a series of extensions, until at least, January, 2007.

eRMS[3] system which maintained electronic data regarding leave requests and other payroll adjustment information. Ex. 1, Wilcox Decl. (Attach C, Krebbs Award, at 3).

Prior to TACS, the data entry work at the Renton, Washington Post Office consisted of payroll adjustments that were manually-inputted after the supervisor generated a written approval/instruction form to the timekeeper. Ex. 1, Wilcox Decl. (Attach. C, Krebs Award at 3). With the advent of TACS, many of these processes became obsolete and were eliminated. When an employee clocks in each day, the work hours are automatically reported via internet to the central TACS database. The supervisor has virtually instant access to this information, as opposed to the old ETC system, where a supervisor would not be aware of the employee's actual work hours until a timekeeper manually input that information, typically, days later.

The TACS database not only automated the process of collecting employee work hours, it also automated the process of inputting most payroll adjustment data. The Enterprise Resource Management System ("eRMS") automatically processes leave requests and other information that employees transmit directly to a centralized telephone call center. Thus, the need for data entry of payroll adjustments has been largely eliminated at the Renton, Washington Post Office, as it has throughout the country.

---

[3] Enterprise Resource Management System is a computer system employed by the Human Resources department within the USPS whereby employees directly enter data regarding their scheduled or unscheduled leave, or other schedule changes, telephonically. This data is electronically linked to TACS and is instantly inputted. Ex. 1, Wilcox Decl. (Attach. C, Krebs Award at 3).

Supervisors perform direct data entry under TACS. Some of this data entry involves correction of clock rings or other payroll data that was formerly performed by the APWU bargaining unit. Some of the data entry duties are newly-created under TACS and involve the creation of management reports and other information that was never performed by the bargaining unit. Ex. 1, Wilcox Decl. ¶ 9.

Shortly after TACS was deployed at the Renton, Washington Post Office, the APWU filed a local grievance alleging that, in implementing TACS, management had taken all of the data entry work previously performed by bargaining unit timekeepers, and improperly reassigned that work to USPS supervisors in violation of article 1.6A of the 2000 National Agreement. Article 1.6A, with certain exceptions, essentially forbids supervisors from performing bargaining unit work. A copy of article 1.6A is attached to the Wilcox Declaration (Attach. A, Collective Bargaining Agreement, p. 4).

Regional Arbitrator Alan R. Krebs sustained the APWU's grievance on November 28, 2005, and found that supervisors were improperly performing certain timekeeping duties that should have been performed by the bargaining unit. The Krebs Award did not involve any timekeeping duties performed outside of the Renton, Washington Post Office. Ex. 1, Wilcox Decl. (Attach C, Krebbs Award, at 13-15).

The Krebs Award involved the timekeeping duties of only one bargaining unit member, Ms. Millie Burns, at the Renton, Washington Post Office. Id.  Prior to the implementation of TACS, those duties were estimated to comprise no more than four to six hours of work per day. Id.

The Krebs Award held that: "The employee who had performed the duties at issue [Ms. Millie Burns], retired when TACS was implemented. Moreover, those duties have been substantially reduced with the new technology . . . The amount of bargaining unit work improperly assigned to supervisors is not evident from the facts presented. In these circumstances, an award of back pay would be particularly problematic and would not be fair. The Postal Service shall reassign the remaining duties which had previously [been] performed by Ms. Burns and is now being performed by supervisors back to the bargaining unit." Id. at 14.

After the Krebs Award was issued, the local postmaster in Renton, Washington sought to clarify the duties encompassed by the Krebs Award with the local office of the APWU. Following numerous verbal discussions, the local postmaster drafted a written proposal for implementation. See Pl.'s Mot. Summ. J., Matt Decl. (Ex. C attached thereto). That document states:

> "The following remaining clerk timekeeping duties formerly performed by Ms. Burns will be reassigned to a clerk in each Renton Station as needed:
> 
> a. Perform daily and weekly clock ring verification with notification to the appropriate supervisor if there is a need to make adjustments. . .
> 
> Those EAS duties directly associated with the new TACS technology will NOT be returned to the clerk craft. These duties include: online data entries, online error correction entries, online adjustments, etc. that are presently being entered directly into FACS by EAS employees.

The post-TACS duties of bargaining unit timekeepers were recently set forth in detail in a policy memorandum issued by John Dockins, Manager of Contract Administration,

9

from USPS headquarters to Postal Service supervisors on July 25, 2006. Ex. 1, Wilcox Decl., Attach B.

That memorandum sets forth the national policy concerning post-TACS timekeeping duties and expressly provides that "TACS has not totally eliminated all bargaining unit functions previously assigned to timekeepers." The specific duties of a timekeeper are to:

- Perform daily and weekly reviews of summary reports to ensure offices within the performance cluster have submitted time and attendance data, and take appropriate action when necessary.

- Process requests for new and/or replacement employee badges from the TACS office.

- Coordinate with the TACS office regarding the maintenance of Employee Master Files for all employees in Post Office or [processing and distribution center].

- Perform data entry of Rural Time Certificates into the TACS system each pay period for the Post Offices.

- Assist supervisors with the preparation and submission of hard copy payroll adjustments (PS Forms 2240 and 2240R) not otherwise processed through the Adjust pay program.

- Answer time and attendance inquiries as needed.

- Maintain files of time and attendance forms such as PS Forms 3971, 1723, 3189, 2240, 2240R, etc where centralized filing is practical for the Post Office or [processing and distribution center].

See Ex. 1, Wilcox Decl. (Attach B, Dockins Mem.).

VIII. <u>ARGUMENT</u>

A. <u>The USPS Has Complied With the Krebs Award</u>

The Postal Service has never refused to implement the Krebs Award. To the contrary, it has engaged in both verbal and written communications with the APWU to ascertain the precise duties to be performed by the bargaining unit. Pl.'s Mot. Summ. J., Matt Decl. ¶ 13 (attached thereto); Ex. 1, Wilcox Decl. (Attach. B Dockins Mem.). In addition to the verbal discussions between the local postmaster in Renton, Washington and the local APWU Associate Office Director, where efforts were made to agree on the specific timekeeping duties to be reassigned to the bargaining unit, the Postal Service issued two policy statements on the subject.

Perhaps the best evidence of the Postal Service's compliance with the Krebs Award is the award itself. There can be no reasonable doubt that the criteria for determining the remaining duties are: 1) the duties must have been performed by Millie Burns; 2) they must not have been eliminated by the TACS technology; and 3) they must not have been transferred to other areas of the bargaining unit, e.g., the Seattle District Office. Ex. 1, Wilcox Decl. (Attach C, Krebbs Award, at 3, 13).

On February 17, 2006, the local postmaster stated, in writing, that certain timekeeping duties were to be returned to the bargaining unit. In the letter, the postmaster expressly stated that "[t]he following remaining clerk timekeeping duties formerly performed by Ms. Burns will be reassigned to a clerk in each Renton Station as needed." Pl.'s Mot. Summ. J., Matt Decl. (Ex. C attached thereto). The proposal went on to list numerous timekeeping duties such as daily and weekly clock ring verification;

processing, logging, and filing of all payroll adjustments; printing and distributing management reports; and verifying and filing requests for leave, temporary schedule changes, and other payroll information.  Id.

Further evidence of the Postal Service's compliance with the Kreb's Award may be found in the Dockins Memorandum listing the duties of the timekeeper that remain after the implementation of TACS.  Ex. 1, Wilcox Decl. (Attach B, Dockins Mem.).   The Dockins Memorandum provided a list of remaining timekeeping duties almost identical to the list proposed by the local postmaster.  These documents and discussions, initiated by the Postal Service, clearly demonstrate the Postal Service's compliance with the Krebs Award.

        B.  Plaintiff's Interpretation is Contrary to the
           Plain Meaning of the Krebs Award

Although the Postal Service has fully cooperated in enforcing the Krebs Award, it opposes plaintiff's Motion for Summary Judgment on the grounds that plaintiff's interpretation of that award is contrary to both the letter and spirit of the Krebs Award.  Nowhere does the Krebs Award require the Postal Service to "return all duties directly associated with the new TACS technology."  Pl.'s Compl. at 3.  Neither do the Steelworkers' Trilogy cases[4] or their progeny, require the enforcement of remedies

---

[4] United Steelworkers v. Enterprise Wheel & Car Corporation, 363 U.S. 593 (1960); United Steelworkers v. American Manufacturing Co., 363 U.S. 564 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960)(holding that courts should not disturb labor arbitration awards except in extraordinary circumstances, so long as the award "draws its essence" from the labor agreement.) Enterprise Wheel, 363 U.S. at 597.

that goes beyond those imposed by the arbitrator.  Plaintiff's reading of the Krebs Award is contrary to both law and fact, and plaintiff is therefore, not entitled to summary judgment, as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); See also Fed. R. Civ. P. 56.

Considering that, at most, the remaining duties consist of those that were previously performed by Ms. Millie Burns on a part-time basis, and that these duties were "substantially reduced" by the advent of the TACS technology, as well as the fact that many of the duties were transferred to the Seattle District Office, the remaining duties could fairly be characterized as de minimus in nature.  To take these de minimus duties and transform them into an alleged entitlement to "all duties associated with the TACS technology", is in total contravention of the Krebs Award and the collective bargaining agreement between the parties.

### C. If the Krebs Award is Found To Be Ambiguous, the Case Should be Remanded Back to the Arbitrator

In his award, Arbitrator Krebs acknowledged that the amount of improperly assigned duties was not evident from the facts presented at the hearing.  Thus, it may be appropriate for the court to remand this matter back to the arbitrator for further clarification of the award.  See Green v. Ameritech Corporation, 200 F.3d 967, 977 (6th Cir. 2000)(providing that "Courts usually remand to the original arbitrator for clarification of an ambiguous award when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation..")(citing

Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co., 56 F.3d 844, 847 (7th Cir. 1995)).  However, the nature of the "remaining duties" that the arbitrator attempted to delineate can be fairly gleaned from the award.  These duties clearly do not include duties made non-existent by the advent of technology, duties properly transferred to the Seattle District Office, and duties that were newly-created under TACS.  Ex. 1, Wilcox Decl. (Attach C, Krebbs Award, at 14).

The APWU has pointed out certain language contained in the proposal that is admittedly susceptible to misinterpretation.  That language provides that certain online data entries and online error corrections performed by supervisors would not be reassigned back to the bargaining unit.  The Postal Service is entitled to protect certain managerial data and other processes that did not exist before TACS, and the Postal Service is not required to allow access to this data by persons outside of management.  The timekeeping duties that Arbitrator Krebs ordered reassigned back to the bargaining unit clearly did not include duties that were either eliminated or newly-created by the new TACS technology.  It is this expansionist view by plaintiff, that the Postal Service seeks to oppose.

### D. There is No Evidence of Bad Faith From Defendant

Plaintiff claims that the Postal Service has acted in bad faith in this case because it has no "good-faith defense" for not complying with the Krebs Award.  Pl.'s Mem. P.&A., at 8.  As discussed infra, the Postal Service, has, at all relevant times, demonstrated complete willingness to abide by the Krebs Award.  Plaintiff cites National Association of Letter Carriers v. U.S. Postal Service, 590 F.2d 1171 (D.C. Cir.

14

1978)(the "NALC case"), for the proposition that the court may sanction parties who act in bad faith, vexatiously, wantonly, or for oppressive reasons in litigation. Id. However, the plaintiff cannot begin to make any such showing here. First, the NALC case did not result in sanctions against the Postal Service, even though the district court granted summary judgment against the Postal Service in its action to clarify the scope of remedy imposed against it by an arbitrator. The Postal Service argued that it should only have been required to pay back-pay from the time that an employee was acquitted of criminal charges, rather than from the earlier date when the employee was suspended from his job. Although the court found the arbitrator's decision to be clear on this point, the court did not find an award of attorney's fees to be appropriate. See Alyeska Pipeline Co., v. Wilderness Society, 421 U.S. 240, 258-259 (1975)( Under the "American Rule", litigants are expected to pay for their own attorneys fees except where provided by statute or contract, to the contrary.).

In this case, the Postal Service has not presented a dubious challenge to enforcement of an arbitration award. It has fully accepted the award and has made every effort to comply with it. Indeed, it is plaintiff who seeks to contravene the award by seeking new duties for the bargaining unit that did not even exist prior to the implementation of TACS.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for similar relief.  Alternatively, the Court should remand this matter back to the arbitrator for clarification as to the specific duties to be reassigned back to the bargaining unit.

Respectfully submitted,

/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office, District of Columbia
555 Fourth St., N.W., Room E-4915
Washington, D.C. 20530
Ph:  (202) 307-0492

Of counsel:
H. Alexander Manuel
United States Postal Service

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, was sent by the Court's Electronic Case Filing System to counsel for plaintiff as follows:

Lee W. Jackson, Esq.
Brenda C. Zwack, Esq.
1300 L Street, N.W., Suite 1200
Washington, D.C. 20005

on this <u>19th</u> day of January, 2007.

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney