UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 06-00934(RJL) |
| UNITED STATES POSTAL SERVICE, | ) ) ) |
| Defendant. | ) ) |

DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 7(h), Defendant hereby submits the following statement of material facts as to which there is no genuine dispute.

1. Prior to June, 2002, the timekeeper at the Renton, Washington Post Office utilized an automated timekeeping system, known as the Electronic Time Clock ("ETC"), to record employee work hours, and to maintain timekeeping records. ETC was a localized, personal computer-based system that required manual input, storage, and transmission of employee work hours. Only one employee, Ms. Millie Burns, was needed to perform all of the timekeeping duties for the Renton, Washington Post Office. Her timekeeping duties only took four to six hours per day to complete. Ex. 1, Declaration of Clifton W. Wilcox (Attach C, Krebbs Award, at 2).

2. The duties performed by Ms. Burns consisted of polling and correction of work hour data known as "clock rings" collected from employee punch cards. Clock rings typically needed to be corrected when an employee neglected to swipe their employee badge when going on or off their shift, or when an employee mistakenly

swiped the wrong employee badge.  Ms. Burns also inputted data from leave authorization forms, or as directed by the supervisor on other written change authorizations.  Other duties performed by Ms. Burns included printing and distributing timekeeping reports for use by management, monitoring overtime hours, maintaining files, ordering employee badges and related clerical duties.  Id. at 3.

    3.  In 1997, the Postal Service notified the APWU that it planned to replace ETC with a state-of-the-art timekeeping system known as TACS.   See Pl.'s Mot. Summ. J., Declaration of Donald Curtis Matt ¶ 4 (Ex. C attached thereto).

    4.  By all accounts, TACS provided significant operational efficiencies over ETC.  TACS provided "real-time" electronic data that was automatically input into the system the instant employees clocked in or out.  TACS was also designed to integrate information from the Postal Service's databases maintained by the Human Resources Department such as the eRMS[1] system which maintained electronic data regarding leave requests and other payroll adjustment information.  Ex. 1, Wilcox Decl. (Attach. C Krebs Award, at 3).

    5.  Prior to TACS, the data entry work at the Renton, Washington Post Office consisted of payroll adjustments that were manually-inputted after the supervisor

---

[1]Enterprise Resource Management System is a computer system employed by the Human Resources department within the USPS whereby employees telephonically enter data regarding their scheduled or unscheduled leave, or other schedule changes into a database.  This data is electronically linked to TACS and is instantly inputted. Ex. 1, Wilcox Decl. (Attach. C, Krebs Award, at 3).

generated a written approval/instruction form to the timekeeper. With the advent of TACS, many of these processes became obsolete and were eliminated. When an employee clocked in each day, work hours were automatically reported via internet to the central TACS database. Supervisors had virtually instant access to this information, under the old ETC system where a supervisor would not be aware of the employee's actual work hours until a timekeeper manually input that information which typically took place days later. Ex. 1, Wilcox Decl. ¶ 8.

      6. The TACS database not only automated the process of collecting employee work hours, it also automated the process of inputting most payroll adjustment data. The eRMS automatically processes leave requests and other information that employees transmit directly to a centralized telephone call center. Thus, the need for data entry of payroll adjustments has been largely eliminated at the Renton, Washington Post Office, as it has throughout the country. Ex. 1, Wilcox Decl. ¶ 9 and Attach. C thereto, Krebs Award, at 4.

      7. Supervisors at Renton, Washington performed direct data entry under TACS. Some of these duties involved correction of clock rings or other payroll data that was formerly performed by the bargaining unit. Some of the data entry duties are newly-created under TACS and involve the creation of management reports and other information that were never performed by the bargaining unit. Ex. 1 Wilcox Decl. ¶ 9. Additionally, some of the duties previously performed by Ms. Burns were transferred to bargaining unit employees at the Seattle District Office. Ex. 1, Wilcox Decl. (Attach. C, Krebs Award, at 11).

8. Shortly after TACS was deployed at the Renton, Washington Post Office, the APWU filed a local grievance alleging that, in implementing TACS, management had taken all of the data entry work previously performed by bargaining unit timekeepers, and improperly reassigned that work to USPS supervisors in violation of article 1.6A of the 2000 National Agreement. See Pl.'s Mem. P.&A., at 1. Article 1.6A, with certain exceptions, essentially forbids supervisors from performing bargaining unit work. A copy of article 1.6A is attached as Attachment A to the Wilcox Declaration. See Ex. 1.

9. Regional Arbitrator Alan R. Krebs sustained the APWU's grievance on November 28, 2005, and found that supervisors were improperly performing certain timekeeping duties that should have been performed by the bargaining unit. The Krebs Award did not involve any timekeeping duties performed outside of the Renton, Washington Post Office. Ex. 1, Wilcox Decl. (Attach. C, Krebs Award, at 13-14).

10. The Krebs Award involved the timekeeping duties of only one bargaining unit member, Ms. Millie Burns, at the Renton, Washington Post Office. Id. Prior to the implementation of TACS, those duties were estimated to comprise no more than four to six hours of work per day. Id. at 2.

11. The Krebs Award stated that:

"The employee who had performed the duties at issue, [Ms. Millie Burns], retired when TACS was implemented. Moreover, those duties have been substantially reduced with the new technology . . . The amount of bargaining unit work improperly assigned to supervisors is not evident from the facts presented. In these circumstances, an

4

>award of back pay would be particularly problematic and would not be fair. The Postal Service shall reassign the remaining duties which had previously [been] performed by Ms. Burns and is now being performed by supervisors back to the bargaining unit."

Id. at. 14.

12. After the Krebs Award was issued, the local postmaster in Renton, Washington sought to reach agreement with the local office of the APWU as to implementation of the award. Pl.'s Mot. Summ. J., Attach. A., Matt Decl. ¶¶ 12 and 13. Following numerous verbal discussions, the local postmaster drafted a written proposal for implementation. Id., Attach. A, Matt Decl. (Ex. C attached thereto). That document states:

> "The following remaining clerk timekeeping duties formerly performed by Ms. Burns will be reassigned to a clerk in each Renton Station as needed:
>
> a. Perform daily and weekly clock ring verification with notification to the appropriate supervisor if there is a need to make adjustments. . .
>
> Those EAS duties directly associated with the new TACS technology will NOT be returned to the clerk craft. These duties include: online data entries, online error correction entries, online adjustments, etc. that are presently being entered directly into FACS by EAS employees.

13. The post-TACS duties of bargaining unit timekeepers were recently set forth in detail in a policy memorandum issued by John Dockins, the Postal Service's Manager of Contract Administration, from USPS headquarters on July 25, 2006, ("Dockins Memorandum."). Ex. 1, Wilcox Decl., Attach. B.

14. The Dockins Memorandum sets forth the national policy concerning post-TACS timekeeping duties and expressly provides that "TACS has not totally

5

eliminated all bargaining unit functions previously assigned to timekeepers." See Ex. 1, Wilcox Decl. (Attach B, Dockins Mem.).

15. The Krebs Award held that the amount of bargaining unit work being performed by supervisors was not evident from the facts presented. Ex. 1, Wilcox Decl. (Attach. C Krebs Award, at 3).

16. The USPS has made reasonable efforts to comply with the Krebs Award, where it pertains to the Renton, Washington Post Office, only. Ex. 1, Wilcox Decl. ¶ 15.

17. The USPS is willing to grant the bargaining unit timekeeper limited access to TACS at the Renton, Washington Post Office that would enable the timekeeper to perform data entry of payroll adjustments as directed by supervisors. The USPS is not willing to grant full access to TACS that would allow the timekeeper to view information beyond what is necessary to verify and correct timekeeping data. For instance, it is not necessary for timekeepers to have access to certain management reports and other sensitive TACS data. See Ex. 1, Wilcox Decl. ¶ 9.

18. In June, 2006, Clifton Wilcox, Headquarters, Labor Relations Specialist for the Postal Service held discussions with Jim McCarthy, Director of the Clerk Craft for the APWU, and Mike Morris, Deputy Director of the Clerk Craft for the APWU, during which Mr. Wilcox notified the APWU of the Postal Service's agreement to fully implement the Krebs Award in the Renton, Washington Post Office only. Mr. Wilcox specifically notified Mssrs. McCarthy and Morris that the

Postal Service agreed to allow the local bargaining unit in Renton, Washington to perform online data entry, error corrections, and related manual data input of supervisor-approved changes to the TACS database.  See Ex. 1, Wilcox Decl. ¶ 15.

          Respectfully submitted,

          /s/ Jeffrey A. Taylor /dvh
          _____
          JEFFREY A. TAYLOR, D.C. BAR #498610
          United States Attorney

          /s/ Rudolph Contreras
          _____
          RUDOLPH CONTRERAS, D.C. BAR #434122
          Assistant United States Attorney

          /s/ Beverly M. Russell
          _____
          BEVERLY M. RUSSELL, D.C. Bar #454257

Of counsel:       Assistant United States Attorney
H. Alexander Manuel      U.S. Attorney's Office, District of Columbia
United States Postal Service      555 Fourth St., N.W., Room E-4915
          Washington, D.C. 20530
          Ph:  (202) 307-0492